ALPHONSE C. BELLETETE *vs.* RALPH E. MORIN (and a companion case [1]).

Essex.    December 4, 1947. — January 2, 1948.

Present: QUA, C.J., LUMMUS, DOLAN, WILKINS, & SPALDING, JJ.

*Negligence*, Gross, Motor vehicle, Contributory.

A finding of gross negligence on the part of the operator of an automobile was warranted by evidence that he was tired and "nodded once or twice," whereupon the automobile went toward the side of the road until its course was corrected by him upon being warned by another occupant, and that shortly thereafter the operator fell asleep and the automobile left the road and struck a pole.

Evidence did not require a ruling of contributory negligence on the part of an occupant of an automobile injured when it left the road and struck a pole upon its operator's falling asleep, although earlier in the journey the occupant had seen that the operator "nodded once or twice" and drove toward the side of the road, and the occupant thereafter had had an opportunity to leave the automobile.

TWO ACTIONS OF TORT. Writs in the Superior Court dated April 25, 1945.

The actions were tried before *O'Brien*, J.

*H. C. Thompson*, (*A. Sigel* with him,) for the defendants.

*T. S. Herlihy*, (*J. A. Foisy* with him,) for the plaintiff.

---

[1] The companion case is by the same plaintiff against Regina Morin.

SPALDING, J.　These are two actions of tort to recover for personal injuries sustained by the plaintiff while riding as a guest in an automobile owned by the defendant Regina Morin and operated by her husband Ralph E. Morin, hereinafter called the defendant.　Verdicts in favor of the plaintiff were recorded under leave reserved.　The cases come here on the exceptions of the defendants to the denial of their motions for directed verdicts and to the refusal of the judge to enter verdicts in their favor under leave reserved.　The only question for decision is whether there was evidence of gross negligence on the part of the defendant.

The jury could have found these facts: On September 3, 1944, the defendant and his wife and children visited the plaintiff who occupied a camp at Tewksbury Pond.　All, including the plaintiff, had driven there from Amesbury in the automobile owned by the defendant's wife.　With the exception of the defendant, they stayed at the camp until evening of the following day.　The defendant worked in the Navy Yard that day and returned to the camp around 8 P.M. to take his family and the plaintiff back to Amesbury. Upon arriving at the camp, the defendant went into a room where he sat down in an easy chair and slept until he was aroused by his wife at quarter to nine.　The plaintiff asked the defendant's wife if the defendant was able to drive home and she replied that she thought that he was. The plaintiff and the Morin family then got into the automobile and started for home.　The automobile was driven by the defendant.

In order to get onto the main road it was necessary to drive over a rough, narrow road, which was bounded on each side by trees and bushes, for a distance of three quarters of a mile.　While travelling over this road the plaintiff noticed that the defendant nodded once or twice and that "the car was touching the bushes and was going off the road."　Observing that the defendant's head was down on his breast, the plaintiff warned him that he was going off the road and the defendant then "turned right back on the road."　The plaintiff then asked the defendant what the

matter was, but the latter made no reply. Thereafter the "defendant drove all right until they got to the main road." After stopping for a moment in order to enable the plaintiff to open a gate which was at the end of the road leading to the camp, the defendant drove onto the main road. This road was fourteen feet wide and had a surface of macadam. While proceeding toward Amesbury the automobile came to a point in the road which curved to the left. But "instead of the car going to the left it turned to the right and crossed the road." The plaintiff noticed that the defendant's head was down on the wheel and hollered "Look out!" but it was too late. The automobile "went zigzag" along the road and hit a telephone post which was located "about three feet from the edge of the macadam road." As the automobile collided with the pole the right hand front door (next to which the plaintiff was seated) opened and the plaintiff "rolled down over a little embankment into a field." The force of the collision "bent" the telephone pole nearly over. The place where the accident occurred was about five hundred feet from the point where the road leading to the plaintiff's camp joined the main road. The defendant's automobile was proceeding at a speed of thirty to thirty-five miles an hour at the time of the accident, "but it was agreed by both parties . . . that there was no element of excess speeding."

A few days after the accident the plaintiff had a conversation with the defendant and his wife in their home, during which the plaintiff said to the defendant's wife "He fell asleep on the wheel" and she replied that she had noticed that his head was down on the wheel. The defendant stated, "It must have been because I was tired." The defendant's wife then said, "He hadn't slept for three or four nights; that is why I wanted to go home early." This statement was not denied by the defendant.

We are of opinion that a finding of gross negligence on the part of the defendant was permissible on this record. If the evidence showed merely that the defendant was tired and that the automobile suddenly left the road and collided with a pole, it would not support a finding of gross negli-

gence. *Shriear* v. *Feigelson*, 248 Mass. 432. *Loughran* v. *Nolan*, 307 Mass. 195, 197. But the evidence went beyond this. The jury could have found that the accident resulted from the fact that the defendant went to sleep at the wheel. A finding was also warranted that shortly before the accident the defendant had "nodded once or twice," and that he knew or should have known that he was not in a condition to continue driving. We think that the case comes within the authority of *Blood* v. *Adams*, 269 Mass. 480, *Moore* v. *Patrone*, 298 Mass. 198, and *Carvalho* v. *Oliveria*, 305 Mass. 304. In the case last cited we said, at pages 305–306, "Without undertaking to lay down a rule that falling asleep is always evidence of gross negligence, at least it may be said that the danger of driving while heavy with drowsiness is so extreme and so self-evident that one who, with knowledge that he is in that condition, persists in driving without making the necessary effort fully to arouse himself can be found to be grossly negligent."

We think that it could not be said as matter of law that the plaintiff did not take ordinary precaution for his own safety. It is true that the plaintiff had an opportunity to leave the automobile when he got out to open the gate. But in view of the manner in which the defendant drove after he was first warned, the plaintiff might reasonably have concluded that it was safe to continue riding with him. *Stowe* v. *Mason*, 289 Mass. 577, 582. *Moore* v. *Patrone*, 298 Mass. 198. *McGaffigan* v. *Kennedy*, 302 Mass. 12, 17. Compare *Laffey* v. *Mullen*, 275 Mass. 277.

*Exceptions overruled.*