EILEEN MULLANEY vs. HORACE T. WHITE, JUNIOR.

Bristol.    October 29, 1952. — November 25, 1952.

Present: QUA, C.J., RONAN, WILKINS, SPALDING, & WILLIAMS, JJ.

*Negligence,* Gross, Motor vehicle, Contributory.

Evidence that an operator of an automobile drove for a considerable
time at night while in a condition of drowsiness, replying in the affirma-
tive to inquiries of a guest riding with him whether he was all right,
until finally "there was a crash" causing injury to the guest, and that
after the accident the operator said that he "guess[ed]" he "fell asleep
at the wheel," warranted a finding of gross negligence on the part of
the operator and did not require a ruling that the guest was guilty
of contributory negligence.

TORT.    Writ in the Superior Court dated November 3,
1948.

The action was tried before *Nagle,* J.

In this court the case was submitted on briefs.

*William A. Torphy,* for the plaintiff.

*Charles R. Desmarais,* for the defendant.

SPALDING, J.    This action of tort is brought to recover
for personal injuries sustained by the plaintiff while riding
as a guest in an automobile owned and operated by the de-
fendant.    After a verdict for the plaintiff the trial judge,
subject to the plaintiff's exception, entered a verdict for
the defendant under leave reserved.    The only question is
whether the evidence warranted a finding of gross negligence.

The plaintiff testified in substance as follows: On Au-
gust 4, 1948, she rode with the defendant in his automobile
from Brockton to Boston, where they spent the evening with
a friend.    As they were leaving for home around 1 A.M. the
plaintiff noticed that the defendant "looked a bit drowsy,"
and asked him if he felt all right.    "She suggested that per-
haps he was a little bit tired and inquired whether he would
rather that . . . [she] drove the car."    The defendant re-

plied that "he didn't feel drowsy and . . . felt all right."
The defendant seemed to the plaintiff to be nodding but he
insisted on driving. When they were outside of Boston
"her conversation suddenly went unanswered," and she no-
ticed that the defendant's "eyes appeared to be heavy and
his head was drooping." They proceeded for about half an
hour when the plaintiff noticed that the defendant was nod-
ding again and she asked him if he was all right, and he
replied that he was. About that time he pulled over to the
side of the road, got out of the automobile, and excused him-
self. "In a couple of minutes" he returned and the plaintiff
again inquired whether he was all right and whether he
wanted her to drive, and he replied that "he was perfectly
capable of handling the wheel." The place where this stop
was made was in a deserted area on a back road to Brockton,
with which the plaintiff was unfamiliar. While continuing
toward Brockton, the plaintiff "leaned back for a few min-
utes." It "was very dark out and there wasn't anything
to watch." The speed of the automobile was thirty-five to
forty-five miles per hour. "The next thing that she knew
there was a crash. She thought that the steering gear had
gone through her." She sustained injuries and was taken to
a hospital. About two or three days after the accident the
plaintiff met the defendant and the testimony as to their
conversation is as follows: "Q. Did you have any talk with
him concerning the happening of the accident? A. Yes, I
did. Q. What was the talk? A. About two or three days
[after] the accident he had a collision of some kind and
landed in the hospital. I had to go in for a checkup . . .
every other day. On one of the visits I was in the hospital
and he was upstairs and I went up to see him. Q. Will you
tell us what he said to you and what you said to him. A. I
asked him what had happened. He said, 'Well, I don't
know. I guess I fell asleep at the wheel.'"

We are of opinion that a finding of gross negligence was
warranted. It could have been found that a condition of
drowsiness had overtaken the defendant which persisted for

such length of time that he ran the risk of an accident in con-
tinuing to drive. In view of the defendant's admission, the
jury could also have concluded that the accident resulted
from the fact that the defendant fell asleep at the wheel. In
*Belletete* v. *Morin,* 322 Mass. 214, on facts quite similar to
those here, it was held that the defendant could have been
found to be grossly negligent. That case is controlling here.
There we said, quoting from *Carvalho* v. *Oliveria,* 305 Mass.
304, 305–306, "Without undertaking to lay down a rule that
falling asleep is always evidence of gross negligence, at least
it may be said that the danger of driving while heavy with
drowsiness is so extreme and so self-evident that one who,
with knowledge that he is in that condition, persists in driv-
ing without making the necessary effort fully to arouse him-
self can be found to be grossly negligent" (page 217). Other
cases to the same effect are *Blood* v. *Adams,* 269 Mass. 480,
and *Moore* v. *Patrone,* 298 Mass. 198.

The suggestion put forward by the defendant that his
admission in the hospital might have had reference to the
subsequent accident rather than to the one in which the
plaintiff was injured does not impress us. The jury could
have inferred that it related to the latter. That was the one
in issue, and what happened in the second accident would
have had no relevancy. That there could have been any
misapprehension as to which accident was meant is quite
unlikely. However, if there was any ambiguity in the ad-
mission it could have been clarified on cross-examination —
a course not pursued by the defendant.

The question of the plaintiff's due care was one of fact
and was rightly submitted to the jury. *Bessey* v. *Salemme,*
302 Mass. 188, 210. *McGaffigan* v. *Kennedy,* 302 Mass. 12,
17. *Belletete* v. *Morin,* 322 Mass. 214, 217.

The exceptions are sustained and judgment is to be en-
tered on the verdict returned by the jury.

*So ordered.*