ALYCE BARRESY *vs.* JAMES A. FREANEY, INC.
(and two companion cases[1]).

Suffolk.    May 7, 28, 1958. — June 3, 1958.

Present: WILKINS, C.J., RONAN, WILLIAMS, COUNIHAN, &
WHITTEMORE, JJ.

*Negligence*, Sumner Tunnel, Violation of law, Motor vehicle. *Evidence*, Competency.

In an action by passengers in an automobile for personal injuries received when it collided in the Sumner Tunnel with the rear of a dump truck of the defendant, a contractor, parked there, while his men were cleaning catch basins, with its lights unlit in conformity to tunnel regulations and with a tunnel guard posted at the place of work, it was proper to exclude testimony of the tunnel superintendent, to whose direction

---

[1] The companion cases are by Dora LoConte and Mildred Giello against the same defendant.

and control the truck was subject while in the tunnel, that the defendant "should have placed flares . . . not less than two hundred feet beyond either end of the vehicle" and that his "failure to do that was a violation of his obligation to protect the safety of the travelling public" where it was not shown that such flares were required by the tunnel regulations or by any instruction given to the defendant by the superintendent, and a finding of negligence on the part of the defendant was not warranted.

THREE ACTIONS OF TORT.  Writs in the Superior Court dated July 16, 1952, October 20, 1952, and March 12, 1953.

The actions were tried before *MacIntosh*, J., a District Court judge sitting under statutory authority.

*Francis V. Matera*, (*S. Jason Ginsburg & John H. F. Calver* with him,) for the plaintiffs.

*Timothy A. Sughrue*, for the defendant.

WHITTEMORE, J.   There was no error in entering verdicts for the defendant in these cases under leave reserved or in the exclusion of testimony.

The jury could have found facts as follows:  The accident in which the plaintiffs, in the three cases tried together, were injured occurred at about 1:30 A.M., May 2, 1952, in the Sumner Tunnel, a vehicular tunnel under Boston Harbor, which is owned by the city of Boston (St. 1929, c. 297, § 14) and is a public way.  Pursuant to a contract with the city, the defendant, shortly after midnight, May 2, 1952, sent a dump truck and four employees to the Boston end of the tunnel.  The truck entered the tunnel and the employees began to clean out the catch basins in the eastbound lane which are about fifty feet apart.  By 1:30 A.M., twenty to twenty-five catch basins had been cleaned of dirt, mud, silt and sand, some of which was saturated with water. The last basin cleaned prior to the accident was fifty feet to the rear of the defendant's truck.  The truck was parked near the next catch basin and there were no lights on the truck or on the floor of the tunnel, although the defendant had instructed its foreman to place lights every night at the sides and twenty-five feet to the rear of the truck.  At each catch basin the removed material was first shoveled to the road surface and from there to the truck.  There was a tun-

nel guard "posted at the point of the work" pursuant to rule or practice. When work is to be performed in the tunnel by outside workmen the superintendent of the tunnel notifies the toll sergeant who changes the traffic lights from "free clearance" or green to "caution" or amber. He then posts a guard at the point of the work and "no further precautions [are] required by the rules and regulations of the Tunnel Authority." (See St. 1929, c. 297, § 9.) The plaintiffs were riding in an automobile operated by John Stira. Stira paid the toll at the Boston end of the tunnel and proceeded into the tunnel in the eastbound lane at about thirty miles an hour, following a taxicab which was then some three hundred feet ahead. The posted speed limit is thirty miles per hour and a notice of the requirement of the regulations to keep fifty feet between vehicles is posted at the tunnel entrance. The traffic control lights on the tunnel wall were green and Stira extinguished his lights as he entered the tunnel as required by the regulations. The plaintiffs and Stira had a clear view for over three hundred feet "and observed [the taxicab] at that distance." There was some traffic in the westbound lane. The guard stopped the taxicab and directed it around the truck. "Stira assumed that the taxi was moving at all times." He "could see no part of the defendant's truck . . . which was obscured by the taxi." "The Stira car slowed down to twenty miles per hour as it approached the taxi." When the Stira automobile was within seventy-five feet of it, the taxicab "suddenly and without prior warning or direction from anyone observable by the plaintiffs, turned out to the left into the westerly lane." The defendant's truck then loomed up approximately sixty feet in front of the plaintiffs. "Stira turned his car to the left and applied his brakes." His automobile then skidded sideways for thirty feet and collided with the rear of the defendant's truck and the rear of the taxicab.

Section 50 of the traffic regulations of the Boston traffic commission (see G. L. c. 90, § 18, as amended; St. 1929, c. 263, § 2) is entitled "Traffic Regulations Relating to the

Use of the Sumner Vehicular Tunnel." It provides in part that all "traffic must at all times comply with any lawful order, signal, or direction, by voice or hand, of any member of the toll guard or police officer. . . . Drivers of vehicles shall at all times keep the same to the right of the center line, unless otherwise directed by the toll guard or police officer. . . . The driver of a vehicle shall not follow another vehicle more closely than is reasonable and prudent, having due regard to the speed of such vehicle and the traffic upon the way. In tunnel, an interval not less than fifty (50) feet shall be maintained between vehicles." These regulations also provide that when the signal lights in the tunnel are yellow "All vehicles shall proceed only as directed by toll guard or police officer."

The superintendent of the tunnel was "charged with the protection . . . of the general public in the use of the tunnel." The plaintiffs offered to show that the superintendent would testify that the defendant "should have placed flares . . . not less than two hundred feet beyond either end of the vehicle . . . and that the contractor's failure to do that was a violation of his obligation to protect the safety of the travelling public." The offered testimony was excluded and the plaintiffs excepted.

We rule that there was no evidence or offer of evidence establishing the defendant's negligence.

It is plain that on the evidence the defendant's truck, in the tunnel, was subject to the direction and control of the superintendent and the employees under him. The express statement of the bill of exceptions is that no precautions were required when work is to be performed in the tunnel "other than to change the lights and post a guard." If flares were nevertheless required by the superintendent within the exercise of a discretion vested in him, it was his duty, acting through the tunnel personnel, to see that the flares were in place. There is no evidence or an offer of evidence that the defendant failed to do anything that it was required to do by any regulation or was told to do in respect of flares or anything else. The offer to show that

the superintendent would say that the contractor "should have placed flares . . . not less than two hundred feet beyond either end of the vehicle . . . to protect the safety of the travelling public" was not an offer to show any regulation or instruction. It was reasonably construable as no more than one man's opinion of careful action in the circumstances. The defendant's instruction to its foreman does not establish a rule applicable in the tunnel or an instruction from the superintendent of the tunnel. We do not reach the question whether, if the defendant had been informed of a requirement of the tunnel authorities to place flares, the defendant's employees were nevertheless sufficiently under the immediate direction and control of the posted guard to make the defendant's obligation that of doing only that which the guard directed.

There is insufficient evidence to support a finding that the road surface was slippery because of muck and that the defendant negligently caused such a condition.

The absence of the usual lights on the defendant's truck conformed to tunnel regulations and forms no basis for concluding that the absence of lights near the vehicle caused the accident. The defendant was not chargeable with the fact that the tunnel lights, contrary to rule, remained green.

We do not reach questions of the plaintiffs' contributory negligence.

*Exceptions overruled.*