MARY WOODCOCK vs. TRAILWAYS OF NEW ENGLAND, INC.[1]
(and two companion cases[2]).

Worcester.    September 21, 1959. — December 9, 1959.

Present: WILKINS, C.J., RONAN, COUNIHAN, WHITTEMORE, & CUTTER, JJ.

*Negligence*, Contributory, Violation of law.  *Evidence*, Regulation, Rele-
    vancy and materiality.  *Practice, Civil*, Charge to jury; Exceptions:
    what questions open.  *Motor Vehicle*, Bus.

At the trial of an action by a guest riding in an automobile for personal
    injuries sustained in a collision with a vehicle of the defendant, a ruling
    requested by the defendant, that if the plaintiff voluntarily fell asleep
    before the accident knowing or having reason to know that the driver
    of the automobile was sleepy she would be guilty of contributory
    negligence and could not recover, would have been in effect a ruling
    that her conduct constituted contributory negligence as matter of law
    and was properly refused.  [39]
No error prejudicial to the defendant was shown, at the trial of an action
    by a guest riding in an automobile for personal injuries sustained in a
    collision with a vehicle of the defendant, by a statement in the judge's
    charge that the plaintiff was "not affected by negligence . . . on the
    part of" the driver of the automobile where the context of such state-
    ment was other statements to the effect that negligence of the driver
    was not to be imputed to the plaintiff but that she would be precluded
    from recovery by a failure on her part to exercise reasonable care for
    her own safety.  [39–40]
At the trial of an action for personal injuries sustained in a collision of an
    automobile with the rear of a bus stopped on a highway at night on
    its way from a Massachusetts city to a city in another State, no error
    was shown in the admission in evidence of a certain regulation of the
    interstate commerce commission respecting the display of a red warn-
    ing by the driver of the bus in such circumstances, although it was not
    shown that there was any penalty for a violation of the regulation.
    [40–41]

---

[1] Edward L. O'Brien became trustee of Trailways, in reorganization under
c. X of the bankruptcy act.  See *O'Brien* v. *State Tax Commission*, 339 Mass.
56.  No point is argued in the briefs based upon any difference between the
trustee and Trailways and, for convenience, the owner of the bus is hereafter
referred to in this opinion as Trailways.

[2] The companion cases are Edward L. O'Brien, trustee, *vs.* L. F. Harris
Co., and Edward L. O'Brien, trustee, *vs.* James A. Hicks.

Woodcock v. Trailways of New England, Inc.

Exceptions to the admission of certain evidence had no merit where, at the time of its admission, the evidence had probable relevance and "an apparent connection with the case" and it might be reasonably assumed that its relevance would be shown by further proof, and after the close of the evidence want of an adequate showing of its relevance was not brought to the attention of the trial judge for appropriate action. [42–43]

THREE ACTIONS OF TORT. Writ in the action by Mary Woodcock in the Central District Court of Worcester dated November 12, 1954; writs in the other two actions in the District Court of Hampshire dated October 20, 1954.

Upon removal of the actions to the Superior Court, they were tried together before *Broadhurst, J.*

*Berge C. Tashjian*, for Trailways of New England, Inc.

*Charles V. Ryan, Jr., (John J. O'Connell* with him,) for the plaintiff Woodcock.

*William H. Welch*, for the plaintiff O'Brien, trustee.

*Stanley B. Milton*, for the defendant Hicks, (*Richard G. Crotty*, for the defendant L. F. Harris Co., with him).

CUTTER, J. These three actions of tort, tried together, arise out of a collision in which an automobile driven by Hicks, and owned by L. F. Harris Co., drove into the rear of a bus of Trailways of New England, Inc. (Trailways), in Southboro at about 1:30 A.M. on March 12, 1954. In the first case, Mary Woodcock, a guest passenger in the automobile operated by Hicks, sought to recover from Trailways for personal injuries. The other two actions were by the trustee of Trailways against Hicks and L. F. Harris Co. to recover for damage to the bus. Mrs. Woodcock obtained a verdict in the first case and there were verdicts for the defendants, Hicks and L. F. Harris Co., respectively, in the other cases.

In the case brought by Mrs. Woodcock, Trailways has argued only exceptions (a) to a portion of the charge relating to contributory negligence and to the judge's failure to give a requested instruction on that issue, and (b) to the admission of evidence of a regulation of the interstate commerce commission. In the other two cases, Trailways has argued only exceptions to the judge's admission of evidence

of a regulation of a State agency and of certain testimony relating to bus stops.

1. The relevant evidence on the issue of contributory negligence is first stated. After Mrs. Woodcock completed work in Worcester at 8 P.M. on March 11, she went with Hicks by automobile to a Boston night club, arriving there about 10 P.M. They remained there for two hours and each had two or three drinks of whiskey and soda. After they left the night club, they had dinner at a nearby restaurant. They left for Worcester about 1 A.M.

Hicks had been to Boston earlier that day. Mrs Woodcock "thought he was sleepy because he had been yawning during the evening" and she told him that "if he was tired she would drive . . . [and] he said he was perfectly all right, not to worry about it." She testified "that after she left the . . . [night club] he was perfectly sober; . . . that she had . . . driven with . . . Hicks before . . . some five or six times, and never observed him driving in a careless or incompetent manner; that there was nothing about his condition or conduct . . . that made her fearful he would not be able to drive . . . in a careful manner." On the trip back to Worcester she dozed off and on, and she did not "remember very clearly about the accident," but was "almost positive" she shouted some warning to Hicks just before the collision already mentioned. There was evidence that she was asleep at the time of the collision.

Trailways excepted to the judge's failure to rule, in accordance with Trailways' request numbered 6, that if Mrs. Woodcock "knew, or had reason to know, that the operator of the vehicle in which she was riding was sleepy or drowsy and she voluntarily fell asleep" this was contributory negligence and she "is not entitled to recover." In his charge, the judge said, "She [Mrs. Woodcock was] not affected by negligence, if there was any, on the part of Hicks." At most, an exception was saved only to this sentence. The sentence objected to had been preceded by a statement that, if the bus company was chargeable with negligence causing the accident, it would "be . . . liable to . . . Mrs.

Woodcock, unless . . . you say she herself was partly to blame . . . by reason of failing to use that care that you say a reasonably careful woman, situated as she was, would use for her own safety." The sentence objected to was followed by the statement, "In the case of Mrs. Woodcock, if there was negligence on the part of Hicks . . . it is not imputed to her . . . if you find that the bus company's operator was negligent in a fashion that contributed to causing the collision. The only thing that would bar . . . her right to recover would be for you to find that she herself was guilty of something in the way of personal negligence."

*Bessey* v. *Salemme*, 302 Mass. 188, 210, decided that "in cases where a guest in a private conveyance . . . of sufficient . . . capacity to exercise care for his own safety, and . . . in none of the relationships [see *Horowitz* v. *Bokron*, 337 Mass. 739, 745–746, and cases cited] to the driver that cause the latter's negligence to be imputed to him . . . is injured . . . [by] the concurrent negligence of the driver and a third person, the inquiry in an action against the third person . . . will be . . . whether . . . [the plaintiff] was guilty of contributory negligence." See *O'Brien* v. *Janelle*, 321 Mass. 316, 317; *Mockevicius* v. *Darois*, 323 Mass. 447, 448. See also *Cerez* v. *Webber*, 318 Mass. 703, 704–706; *Belletete* v. *Morin*, 322 Mass. 214, 217; *Mullaney* v. *White*, 329 Mass. 464, 466.

Trailways' request numbered 6 could not have been given. The instruction in effect would have told the jury that certain conduct would constitute contributory negligence as a matter of law, whereas, under the cases just cited, it was a question of fact for the jury whether in the circumstances Mrs. Woodcock was negligent. The judge's charge, viewed as a whole, did state the law fairly although the sentence excepted to, viewed by itself and out of context, could perhaps be interpreted as an instruction that Hicks's conduct was wholly irrelevant in appraising whether Mrs. Woodcock herself was negligent. Obviously, Hicks's conduct was one of the circumstances with reference to which Mrs. Woodcock's due care, or lack of it, must be determined. In con-

text, however, the sentence means just what the next sentences say, that Hicks's negligence, if any, was not to be imputed to her, but that her right to recover for Trailways' negligence, if any, is not barred unless she herself was negligent. We perceive no prejudicial error. To other portions of the charge mentioned in Trailways' brief no exception was taken.

2. One LaCouer, district supervisor of the interstate commerce commission, was permitted, subject to Trailways' exception, to introduce in evidence part of § 192.23 of the commission's regulations.[3] There was some evidence which would have warranted a finding that Trailways had violated § 192.23 if it was applicable. Trailways now contends that this was erroneous because there was no evidence that the regulation "did . . . apply to the operation of the . . . bus . . . from Boston to New York or that there was any penalty attached to its violation." Violation of an applicable regulation "is evidence of negligence as to all consequences that were intended to be prevented" if the "violation is shown to have been actually a proximate cause" of the injury. *Kralik* v. *LeClair*, 315 Mass. 323, 326. Although more ample evidence of the applicability of the regulation to the Trailways bus appropriately could have been introduced, we think that its applicability was sufficiently established. The bus was bound from Boston to New York, and hence was an interstate bus. LaCouer had testified that the "regulations have to do with the transportation of passengers by motor vehicle in interstate commerce." See 49 U. S. C. (1952) § 304 (a) (1). It is not essential to the admission of an applicable regulation of an appropriate governmental body, as evidence bearing on the issue of negligence, that the regulation be one under which a penalty for its viola-

---

[3] The regulation reads in part: "Whenever for any cause, other than disablement or necessary traffic stops, any motor vehicle is stopped upon the traveled portion of any highway . . . during the time that lights are required, except within a municipality where there is sufficient highway lighting to make clearly discernible the presence of vehicles on the highway for a distance of 500 feet, the following requirements shall be observed: A. The driver of said vehicle shall immediately place on the traveled portion of the highway at the traffic side of the vehicle a lighted fusee, a lighted red electric lantern or a red emergency reflector."

tion is imposed. *Carbone* v. *Trustees of N. Y., N. H. & H. R.R.* 320 Mass. 710, 712–713. Restatement: Torts, § 287. See *Kushner* v. *Dravo Corp.* 339 Mass. 273, 276–278. See also *Barresy* v. *James A. Freaney, Inc.* 337 Mass. 643, 645–647. Cf. *Neu* v. *McCarthy*, 309 Mass. 17, 24–25.

3. At the time of the collision the Trailways bus was stopped at a curbing on the north side of Route 9 in Southboro facing west toward Worcester. It stood at a point fifteen to twenty feet west of Central Street which runs north at a right angle from Route 9. The driver had left his bus to make a telephone call on orders from his dispatcher when Hicks's automobile ran into the rear of the bus.

Article II, § 4 (b), of a regulation (described as one promulgated by the "registry of motor vehicles" [4]) introduced in behalf of Hicks subject to Trailways' exception, provided: "No person shall stop . . . a bus upon any state highway at any place other than a bus stop when a nearby bus stop is available for use." One Napolitano, superintendent of buildings and properties of the Boston & Worcester Bus Company, testified, subject to Trailways' exception, that there was a bus stop on "the easterly corner of Central Street and" Route 9, "at a utility pole" marked (by the Boston & Worcester Bus Company) for about three feet with white paint (and by the number 14) at a point starting "about five feet from the ground." The Trailways bus was stopped substantially west of this pole. Napolitano also testified that "it was designated as [a] Boston & Worcester Bus Company stop" and that in "that particular area" the witness did not "think there was any . . . bus stop other than ours." There was no testimony from any State official or any town official of Southboro or by any public record that this location had been established as a bus stop, or that the action establishing it made it available to vehicles other than Boston & Worcester Bus Company buses.

---

[4] A division of the department of public works, which appears to have issued the regulation, for that, in another section, refers to ways "under the control of the department."

There was some obscure testimony by Napolitano that the selection of bus stops "generally comes up in the form of a petition to the communities. It goes to the DPU, and they inform us that such and such a pole is to be painted."

There was evidence from which it could have been found that the bus was damaged, that Hicks was negligent, and that in other respects than by possible violation of § 4 (b) of the regulation, Trailways was chargeable with contributory negligence. L. F. Harris Co. could have been found to be responsible for Hicks's negligence. See G. L. c. 231, § 85A.

The testimony of Napolitano about the physical presence of a white marked pole indicating a bus stop was admissible in connection with a description of the general scene of the accident. See *Salvato* v. *DiSilva Transp. Co. Inc.* 329 Mass. 305, 312–313. See also *Reardon* v. *Marston,* 310 Mass. 461, 462–463; *Burgess* v. *Giovannucci,* 314 Mass. 252, 255. Since a bus was involved in the accident, this testimony at the time it was unconditionally admitted, and also the provisions of the regulation (art. II, § 4 [b]), had probable relevance and "an apparent connection with the case" (see Wigmore, Evidence [3d ed.] § 1871, at p. 504) on the reasonable assumption that other facts about the bus stop would be proved showing its significance and that, upon analysis, § 4 (b) of the regulation would be found to have application to interstate as well as to Boston–Worcester buses.[5] See *Lockling* v. *Wiswell,* 318 Mass. 160, 164.

It is far from clear that § 4 (b) was intended to apply to interstate buses not shown to make regular stops in the area or that the bus stop was one at which such an interstate bus was permitted to stop so that it would be "available" to Trailways within the meaning of § 4 (b). It may be, also, that § 4 (b), properly interpreted, was not directed

---

[5] We do not rely, in holding that there was no error in admitting this testimony, upon any theory, such as that suggested by counsel for Hicks, that, by cross-examining Napolitano about the bus stop, Trailways' counsel waived any objection to testimony about it. In the view we take of the case, it is unnecessary to deal with this question discussed in McCormick, Evidence, § 55; Wigmore, Evidence (3d ed.) § 18 (D), pp. 344–346.

to the safety of others than bus passengers.   These questions of law were not adequately presented to the trial judge, and are not now brought before us, by the exceptions to the admission of evidence about § 4 (b) and about the bus stop. If Trailways desired to preserve these questions of law for review it should have done so by appropriate exceptions (a) to action of the judge in denying either suitable requests for rulings or motions to strike evidence as insufficiently connected with the issues at the end of the testimony, or (b) to pertinent portions of the charge.   No such exceptions have been argued if, indeed, any were saved.   We do not decide the questions of law which might have been presented by these methods.

4. In all the cases, the entry must be

*Exceptions overruled.*