THEBY, Administratrix, Respondent, vs. WISCONSIN POWER & LIGHT COMPANY, Appellant.

*December 6, 1928—January 8, 1929.*

604

For the appellant there was a brief by *Schubring, Ryan, Clarke & Petersen* of Madison and *Hoyt, Bender, McIntyre & Hoyt* of Milwaukee, and oral argument by *William Ryan, Eugene McIntyre,* and *Ralph E. Axley.*

For the respondent there was a brief by *Bloodgood, Kemper & Bloodgood,* attorneys, and *Albert K. Stebbins,* of counsel, all of Milwaukee, and oral argument by *Mr. Stebbins.*

The following opinion was filed January 8, 1929:

ROSENBERRY, J.  The propositions urged here on behalf of the defendant may be broadly stated as follows: first, that the evidence offered and received upon the trial does not sustain the finding of the jury as to the negligence of the defendant as to clearance between the defendant's lowest high-tension wire at the top of the city pole and the top wires belonging to the city; nor the finding as to proximate cause; second, that from the evidence it appears that it is at least as probable if not more probable that the deceased was injured

by electricity from the city's 2,300 volt line as it was that he was injured by a current from the 66,000 volt line of the defendant; third, that the deceased was guilty of contributory negligence as a matter of law; fourth, plaintiff's election to rely on gross negligence requires dismissal of the complaint, there being no evidence to sustain the finding of the jury in that regard; fifth, that the plaintiff failed to prove ownership of or right to prosecute the cause of action set out in the complaint; sixth, that the judgment should be reversed for errors upon the trial—(a) finding of the jury as to ordinary and gross negligence are inconsistent and cannot support a judgment; (b) the damages are excessive; (c) the trial court erred in instructing the jury; and (d) that the trial court erred in refusing evidence offered by the defendant to establish negligence on the part of the city of Columbus and in refusing to submit appropriate questions in the special verdict relating to the negligence of the city.

We have been favored with exhaustive briefs upon both sides on questions of fact involved in this case. The questions were presented to the trial court and upon appeal in an orderly and lawyerlike manner on both sides. No debatable question has been overlooked. We have given the questions presented our very careful consideration. It is not considered that it would either be wise or helpful to attempt to set out a complete and detailed statement of facts. Two things appear, however, without dispute: first, that the deceased was killed by an electric current after he had reached, so far as the wires of the city were concerned, a place of comparative safety on the cross-arms of the city's electric light pole; second, that after he had sustained his injuries the current was cut off from the city's distribution plant so that none of the city wires were energized; that thereafter his co-employee Daher, in attempting to reach the place where the body of the deceased was suspending, was killed by a cur-

rent of electricity which could come from nowhere else than the electric system maintained by the defendant, it not appearing that Daher was at any time in a more dangerous situation with respect to the defendant's high-tension wires than was the deceased. The operation of defendant's distribution system at or about the time of the accident is set out in great detail, but it appears quite conclusively that defendant's high-tension wire did not break until at or about the time Daher sustained his injuries. Upon the whole case it is considered that a jury question was presented and that it cannot be said that there is not sufficient credible evidence to sustain the verdict or that the conclusion of the jury is in the realm of speculation and conjecture.

The jury found the deceased free from contributory negligence; in opposition to that, it is argued that he was guilty of contributory negligence as a matter of law principally because he did not properly protect himself by wearing proper equipment such as rubber gloves against the effect of the high-power electric current. It is conceded that any sort of clothing or equipment with which the deceased might have provided himself would have been ineffectual as against a current of 66,000 volts. This being so, the matter of whether or not Theby was guilty, under all the circumstances, of negligence which contributed to his injuries was a jury question and the finding of the jury upon that question must stand. The effect of the finding as to gross negligence will be discussed later.

The defendant claims that, the plaintiff having been paid compensation under the workmen's compensation act, the claim was thereby assigned to the city of Columbus as employer; that there was no assignment back to the plaintiff of the cause of action; that a proper demand was not made and served for the prosecution of the claim by the city of Columbus under the statute. It appears that there was an award of compensation against the city of Columbus; that its insur-

ance carrier, the United States Fidelity & Guaranty Company, paid the award. The statute provides:

"Section 102.29 (1). The making of a lawful claim against an employer or compensation insurer for compensation under sections 102.03 to 102.34, inclusive [workmen's compensation act] for the injury or death of an employee shall operate as an assignment of any cause of action in tort which the employee or his personal representative may have against any other party for such injury or death; and such employer or insurer may enforce in their own name or names the liability of such other party for their benefit as their interests may appear. . . . The failure of the employer or compensation insurer in interest to pursue his remedy against the third party within ninety days after written demand by a compensation beneficiary, shall entitle such beneficiary or his representatives to enforce liability in his own name, accounting of the proceeds to be made on the basis above provided."

On the 4th day of December, 1926, the plaintiff by her attorneys made the following demand upon the city of Columbus and the insurance carrier, the United States Fidelity & Guaranty Company:

"The undersigned hereby demands that you forthwith commence an action against Wisconsin Power & Light Company for the recovery of damages on account of the physical suffering sustained by E. J. Theby on April 30, 1926, and also for the death of said E. J. Theby occasioned by the wrongful act of said Wisconsin Power & Light Company.

"You are further notified that in the event of your failure to commence such proceedings within ninety days from the date hereof, the undersigned will institute such action, in accordance with the provisions of section 102.29 of the statutes of the state of Wisconsin."

On behalf of the insurance carrier, service of the notice was admitted by its Wisconsin manager, George G. Goff, and on behalf of the city of Columbus by its mayor, G. E. Bunso. This action was begun April 20, 1927, more than ninety days after the service of the notice upon the city and

the insurance carrier. Under the statute neither the employer nor the insurance carrier became entitled to any part of the plaintiff's claim based upon pain and suffering or that based upon gross negligence for punitory damages. The demand with the admission of service by the insurance carrier and by the city of Columbus was offered in evidence by the plaintiff's attorneys, who were also the attorneys for the insurance carrier, and because of the well known relationship existing the proof was not as complete as it should have. been. In any event the plaintiff had the right to maintain the action, and if the defendants have any doubt as to the right of the plaintiff to maintain the action in her own name and discharge the judgment if and when paid, the trial court can, as a condition of payment, require the plaintiff to secure, by release or otherwise as may be deemed most appropriate, the defendant from the possibility of any claim by the employer or insurance carrier because of any interest either or both of them may have in the cause of action set out in plaintiff's complaint. While the proof as to agency may be technically insufficient, it is considered that the case should not be reversed on that ground.

The verdict in this case is set out in full in the statement of facts. It is contended by the defendant that the verdict is fatally inconsistent under the doctrine announced in *Haverlund v. C., St. P., M. & O. R. Co.* 143 Wis. 415, 128 N. W. 273. This leads to a consideration of what was in fact submitted by the court to the jury in this case. By question 4 the court attempted to submit to the jury for its determination the question of gross negligence. The court's instructions with respect to question 4 are as follows:

"Question 4 reads: 'Was there a want of care on the part of defendant of such a kind as to indicate a wilful disregard of the lives or safety of others: (A) As to clearance between defendant's wire and the top of the city pole? (B) As to clearance between defendant's wire and the top wires of the city?'

"A of this question asks you to determine whether, at the time and place of the accident, there was negligence on the part of the defendant of such a kind as to indicate a wilful disregard of the lives and safety of others with reference to clearance between defendant's wire and the top of the city pole.

"Again your attention is directed to sub. (a) of order No. 1227 of the code as heretofore read and explained to you.

"The burden of proof as to A of question 4 is upon the plaintiff to convince you by the preponderance of the evidence that it should be answered 'Yes.' Answer it 'Yes' or 'No' as you find the fact to be.

"B of question 4 asks you to determine whether, at the time and place of the accident, there was negligence on the part of the defendant of such a kind as to indicate a wilful disregard of the lives and safety of others, with reference to clearance between defendant's wire and the top wires of the city.

"Your attention here is directed to sub. (b) of order 1227 of the code as heretofore read and presented.

"The burden of proof is upon the plaintiff as to B of question 4 to convince you by the preponderance of the evidence that it should be answered 'Yes.' Answer it 'Yes' or 'No' as you find the fact to be."

In respect to each element the court told the jury that they were to determine whether "there was negligence on the part of the defendant of such a kind as to indicate wilful disregard of the lives and safety of others" and directed their attention to sub. (a) of order 1227 of the Industrial Commission, which was as follows:

"Order 1227. *Clearances of conductors of one line from poles and conductors of another line.* (a) *Clearances from poles.* Where conductors of one line are carried within six feet from a supporting structure of a second line, and are not attached thereto, the clearance between the conductors of the first line and any part of the supporting structure of the second line shall, if practicable, be not less than three feet at 60 degrees F. and no wind. In no case should this clearance be less than the values required by orders 1221 and

1222, for separation between similar conductors on the same support, increased by one inch for each two feet of the distance from the supporting structure of the second line to the nearest supporting structure of the first line. The climbing space on the structure of the second line shall in no case be reduced by a conductor of the first line.

"(b) *Clearances from conductors.* The clearance in any direction, at 60 degrees F. with no wind, of any conductor of one line from any conductor of a second and conflicting line shall not be less than required by orders 1221 and 1222 for separation between conductors on the same support and shall not be less than four feet.

"It shall be at least equal to the apparent sag of the conductor having the greater sag plus .2 inch for every 1,000 volts of the highest voltage concerned."

The court apparently acted upon the assumption that if the jury found that there was a violation of the statute they might find therefrom that there was such a wilful disregard of the lives and safety of others as amounted to gross negligence, although the court did not use the term "gross negligence."

For more than a quarter of a century gross negligence in our jurisprudence has been defined to be a species of negligence not involving inadvertence but an intentional wrong or something equivalent thereto. In the *Haverlund Case,* already referred to, it is said:

"It is therefore erroneous to treat these two species of wrongs as of the same character and kind and to hold that the acts of a person, amounting to a wilful wrong and termed 'gross negligence,' are the same as the wrongful acts or omissions of a person flowing from an inadvertent failure to do his duty toward another."

In *Bentson v. Brown,* 186 Wis. 629, 203 N. W. 380 (see, also, note 38 A. L. R. 424), the court said:

"It is the settled law of this state that in order to constitute gross negligence there must be either a wilful intent to injure, or that reckless and wanton disregard of the rights and safety of another or of his property, and that willing-

ness to inflict injury, which the law deems equivalent to an intent to injure." (Quoting from *Willard v. C. & N. W. R. Co.* 150 Wis. 234, 136 N. W. 646.)

The court nowhere advised the jury with respect to this element of gross negligence as it is presently defined in our law. The term "wilful disregard" as used might be properly applied with respect to the acts of a person violating any statute designed to protect the interests of others. There must be something beyond that intent inferred in the law by reason of the fact that one has done an unlawful act in order to sustain a finding of gross negligence. Such was the holding in the case of *Bentson v. Brown, supra.* Strictly and logically speaking, the term "gross negligence" as defined in our law is a misnomer. This has been pointed out a number of times. A negligent act lies in the field of inadvertence. A grossly negligent act as defined in our law is one which is intentional or done under such circumstances as to make the wilful, wanton disregard of the rights of others equivalent to an intent. If an act lies in the field of intention, then it is beyond and out of the field of negligence. Gross negligence therefore becomes a technical term in our law and is practically equivalent to an intentional wrong, the intention being express or implied from the circumstances. We find nothing in the facts in this case which would sustain a finding of gross negligence as that term is known in our law. As the case was submitted, the finding of the jury with respect to gross negligence was no more than a second finding that the defendant was guilty of ordinary negligence as that term is defined. Whether or not gross negligence should be re-defined presents a matter for subsequent consideration. The circumstances of this case do not call for a re-definition or reconsideration of the matter. The court was therefore in error in awarding judgment for punitory damages, which lie only in cases where the evidence sustains a verdict of gross negligence. The

election of the plaintiff to stand on the finding of gross negligence was no more than an election to stand on the verdict as a whole, which found nothing but ordinary negligence. The judgment should be modified by striking therefrom the sum found by the jury as punitory damages, $3,200, and as so modified the judgment should be affirmed.

Error is also assigned with respect to the instructions of the court regarding the number who should agree upon a special verdict. Inasmuch as each element of the verdict was agreed to by the same ten jurors, no reversible error was committed in that respect, nor did the court err in refusing to receive evidence offered by the defendant with respect to the negligence of the city of Columbus, nor in refusing to submit a special verdict in respect thereto.

*By the Court.*—Judgment appealed from is modified by striking therefrom the sum of $3,200 found as punitory damages, and as so modified it is affirmed, the appellant to recover costs in this court.

The following opinion was filed March 5, 1929:

PER CURIAM. On motion for rehearing the court is asked to reconsider the amount awarded upon the verdict of the jury for pain and suffering. The deceased, Theby, lived for about thirty hours after sustaining the injuries from which he died. There was not complete unconsciousness and it appears that Theby suffered a considerable amount of pain. However, upon the authority of *Rogers v. Lurye Furniture Co.* 193 Wis. 496, 211 N. W. 782, 215 N. W. 457, and *Wasicek v. M. Carpenter Baking Co.* 179 Wis. 274, 191 N. W. 503, it is plain that the verdict on account of pain and suffering in this case cannot be permitted to stand. The court is of the opinion that $750 is the largest amount which a jury would be warranted in awarding the plaintiff on account of pain and suffering endured by the deceased. Our

disapproval of this part of the verdict, however, does not make a new trial upon all of the issues necessary.

It is ordered: that the former mandate entered in the case be and it is vacated and set aside; the judgment appealed from is reversed with directions to the lower court to modify the same by striking therefrom the amount of $3,200 found as punitory damages; that part of the verdict relating to damages for pain and suffering is set aside and a new trial awarded the defendant unless the defendant shall elect, within twenty days after service of notice of the filing of the *remittitur* and record in the circuit court, to permit judgment to go against it on account of damages for pain and suffering in the sum of $750; if the defendant shall not so elect, then the defendant shall be entitled to a new trial only as to damages sustained by the plaintiff on account of pain and suffering of the deceased; in all other respects the verdict of the jury is approved, and judgment should be entered accordingly.