CHRISTIE, Plaintiff in error, vs. THE STATE, Defendant in error.

*May 12—June 6, 1933.*

*R. W. Peterson* of Berlin, for the plaintiff in error.

For the defendant in error there was a brief by the *Attorney General, J. E. Messerschmidt,* assistant attorney general, *Earl F. Kileen,* district attorney of Waushara county, and *M. S. King,* special assistant district attorney, and oral argument by *Mr. King* and *Mr. Messerschmidt.*

FAIRCHILD, J.   The pleadings are sufficient.   The evidence supports the verdict of the jury finding the accused guilty of manslaughter in the fourth degree.   Plaintiff in error contends that under the evidence he could be convicted

only of manslaughter in the first degree, and having been acquitted of that offense he was entitled to be discharged. But the gross negligence concurring with and directing the act fixes the grade of the crime and furnishes the test by which the degree of guilt is to be determined. Circumstances may arise where, as here, a jury question exists as to which of two degrees of manslaughter the accused is guilty. The failure to convict of manslaughter in the first degree acquitted the accused of that charge only. All the evidence properly received is open to investigation for the purpose of ascertaining whether the plaintiff in error is guilty of any other offense charged in the information against him. The difference between the crime of manslaughter in the first degree and manslaughter in the fourth degree is such that an acquittal of the higher degree does not affect the conviction of the crime of the lesser degree.

The killing of a human being, without any design to effect death, by the act, procurement, or culpable negligence of any other while such other is engaged in the perpetration of a crime not amounting to a felony in cases where such killing would be murder at common law, is manslaughter in the first degree. In this case the jury were told that if they found the plaintiff in error not guilty of manslaughter in the first degree, then to determine his guilt or innocence of the charge of manslaughter in the fourth degree. This offense is defined by sec. 340.26, Stats., as: "Every other killing of a human being by the act, procurement or gross negligence of another, where such killing is not justifiable or excusable, or is not declared in this chapter murder or manslaughter of some other degree, shall be deemed manslaughter in the fourth degree." This charge was properly before the court and the conviction under this charge is all that is to be considered upon this writ of error.

On the evening of January 3, 1932, plaintiff in error and John Coon started on an excursion. They left Coon's home

in the city of Berlin, Wisconsin, in Coon's car early in the evening. They had in their possession a pint bottle of gin. Their original intention was to drive to a roadhouse located some four miles north, but, changing their plan for the time being, they visited a saloon in the city. Drinking was there indulged in by both plaintiff in error and Coon. After an hour's stay at this saloon plaintiff in error borrowed Coon's machine and drove away, returning about forty-five minutes later. More drinks were consumed. At 10:30 o'clock the men left the saloon and called at the house of an acquaintance where more drinks were had. The testimony of those at the house describes both the plaintiff in error and Coon as showing marked signs of intoxication; that plaintiff in error was quarrelsome, talked about a desire to "beat somebody up." About a quarter of twelve, after a dispute between the men as to who was able to drive the car, each insisting that he was able, the keys were given to plaintiff in error by Coon who remarked, "drive if you think I can't." After leaving the house of their friends about 12:30 or 1 o'clock that night they drove to the roadhouse they originally had planned to visit. There Coon, according to statements made that night by the plaintiff in error, was unable to get out of the car. The evidence of the proprietor of the roadhouse and of the bartender is to the effect that plaintiff in error was quarrelsome, took off his coat, threw it on the bar, and challenged the bartender to fight; that a bottle containing some liquid fell out of his pocket at this time, and that he was intoxicated. Plaintiff in error left this roadhouse after a visit of about twenty-five minutes, getting into the car where Coon was, and drove away. A half mile north of that place he ran into the ditch and Coon was killed. The state of mind of the plaintiff in error at this time was such as to evince little or no regard for others or their rights. That this attitude played its part in the fatality that followed is amply proven. He took charge of the car and so

handled it as to show no consideration for the safety of himself or that of his companion. The track of the wheels of the car showed that after leaving the concrete the car traveled a considerable distance before it came to a stop; that at a point 100 feet from where the car left the concrete the right wheel was one foot from the edge; at 120 feet it was two feet; at 200 feet it was four feet; at 248 feet it had passed over the shoulder to the right; at 275 feet it was out six and one-half feet; from there it traveled striking a stump on the back slope of the ditch, moved on twenty-three feet farther where it came in contact with a tree, and then traveled twenty-seven feet more, ran head-on into another tree, thirteen and one-half feet from the edge of the concrete. The position of the parties, the marks upon the ground, the injuries to the car, make it apparent that when the car struck the stump the right door of the car sprang open and Coon was thrown far enough into the opening so that when the car in its forward movement came in contact with the tree on the right side, he was so caught that his skull was fractured, jawbone crushed, ribs broken, and he was instantly killed.

The jury were instructed that in determining the guilt or innocence of plaintiff in error of manslaughter in the fourth degree they were to consider whether Coon's death was caused by gross negligence of the plaintiff in error. The learned trial judge said:

"I now invite your attention to what is meant by gross negligence. Bearing constantly in mind that no degree of negligence is sufficient to constitute gross negligence, you should understand that gross negligence means something more than mere negligence. It means an indifference to obvious consequences; an indifference to the rights of others; indifference as to whether an injury to another be done or not. The conduct must indicate such disregard of consequences as to evince little short of actual intent to inflict injury; a willingness to perpetrate injury or a purpose to

take known chances of perpetrating an injury; and they must constitute the equivalent so far as turpitude and consequences are concerned of intent and willingness to perpetrate an injury."

The evidence before the jury warranted their finding that plaintiff in error voluntarily indulged in intoxicating liquor to such an extent as to interfere with his exercising ordinary care; that his acts in driving the automobile were wanton and performed with a reckless disregard of the rights of others. resulting in the killing of a human being. This, as said in *Tomasik v. Lanferman,* 206 Wis. 94, 238 N. W. 857, "fully responds to all of the elements necessary to constitute gross negligence. One intoxicated is without proper control of all those faculties the exercise of which is necessary to avoid danger to others while driving a car upon a public highway. The driving of a car by one in such condition betrays an absence of any care, and indicates such recklessness and wantonness as evinces an utter disregard of consequences." See, also, *Steinkrause v. Eckstein,* 170 Wis. 487, 175 N. W. 988; *Jorgenson v. Chicago & N. W. R. Co.* 153 Wis. 108, 140 N. W. 1088; *Clemens v. State,* 176 Wis. 289, 185 N. W. 209.

We are of the opinion that there was no error committed in submitting the question of plaintiff in error's guilt of manslaughter in the fourth degree, that the evidence amply sustains the verdict, and that the motions after verdict on the part of the defense were properly denied.

*By the Court.*—Judgment affirmed.