BIELSKI and wife, Plaintiffs and Respondents, v. SCHULZE and another, Defendants and Respondents: MUTUAL SERVICE CASUALTY INSURANCE COMPANY, Impleaded Defendant and Appellant.

*November 30, 1961—March 6, 1962.*

For the appellant there was a brief by *Vaudreuil & Vaudreuil* of Kenosha, and oral argument by *Leo E. Vaudreuil.*

For the respondents there were briefs by *Bender, Trump, Davidson & Godfrey,* attorneys, and *Kneeland A. Godfrey* of counsel, all of Milwaukee, and oral argument by *Kneeland A. Godfrey.*

Briefs *amici curiae* were filed by the *La Crosse County Bar Association* and by *Irving D. Gaines, Albert J. Goldberg, Robert L. Habush,* and *Arlo A. McKinnon,* all of Milwaukee.

HALLOWS, J. Appellant argues the court should have found the defendant Schulze grossly negligent as a matter of law and denied his insurer contribution. The accident occurred at the intersection of Highway 50 and County Trunk Highway HH in Kenosha county, on July 17, 1959, at about 4 p. m. Prior to the accident Carl Bielski, with his wife Elnora in the front seat and their two children in the back seat, was driving his car in an easterly direction on Highway 50 just west of the intersection with HH, and Schulze was driving his car in a westerly direction on Highway 50 with the purpose of turning left onto HH. When Bielski was about 200 feet from the intersection, he saw Schulze's car with its left-turn signal on. When the Bielski car, traveling between 45–50 m. p. h., was about 70–80 feet from the Schulze car, Schulze, proceeding at a speed of about 10–12 m. p. h., turned left across the eastbound lane of Highway 50 onto HH. Bielski applied his brakes and skidded about 60 feet before colliding with the Schulze car in the eastbound lane of Highway 50, in the southeast quarter of the intersection.

At the time of the accident, the weather was clear and the road dry. The speed limit on Highway 50 was 50 m. p. h. Schulze had been drinking prior to the accident and a test made while he was in the hospital showed an alcohol con-

tent in the blood of 0.33 percent by weight. The correctness of this test and the effect of Schulze's drinking was the subject of conflicting testimony. We have reviewed the evidence and conclude a jury question was presented and the jury could find, while Schulze had been drinking, his conduct did not amount to gross negligence. Whether his conduct amounted to gross negligence as a matter of law is immaterial in view of our conclusion on that point expressed later in this opinion.

The appellant's second argument is that the making of a sudden left turn by Schulze created an emergency and Bielski was not guilty of causal negligence as to speed. It is true, Bielski was driving within the speed limit, but as he approached the intersection and saw the turn light on Schulze's car, he did not reduce his speed as required by sec. 346.57 (3), Stats. Bielski had 200 feet in which to reduce his speed after he saw Schulze's car approaching with his left-turn signal operating. If he had done so, he could have stopped his automobile sooner when Schulze made his left turn. Bielski left skid marks on a dry pavement of some 60 feet. At the time of the impact, the Schulze car was almost across the eastbound lane of Highway 50 and facing practically south when struck. There was credible evidence for the jury to find causal negligence as to speed on the part of Bielski. *Rodenkirch v. Johnson* (1960), 9 Wis. (2d) 245, 101 N. W. (2d) 83; *Ruid v. Davis* (1959), 8 Wis. (2d) 288, 99 N. W. (2d) 129.

The emergency doctrine has no application because even though Schulze was negligent in turning to the left, Bielski is not entitled to the benefit of the emergency rule as he was likewise negligent. *Schmidt v. C. Schlei Dray Line* (1959), 7 Wis. (2d) 374, 97 N. W. (2d) 194; *Wiley v. Fidelity & Casualty Co.* (1958), 3 Wis. (2d) 320, 88 N. W. (2d) 366; *Jewell v. Schmidt* (1957), 1 Wis. (2d) 241, 83 N. W. (2d) 487.

If it were not for the additional questions, the judgment would be affirmed. The court, however, decided to re-examine the doctrines of contribution between joint tort-feasors and of gross negligence, and requested briefs on the following questions: (1) Whether the amount of liability for contribution of tort-feasors who sustain liability by reason of concurrent causal negligence should be determined in proportion to the percentage of causal negligence attributable to each, and (2) whether the conduct heretofore character-ized as gross negligence should be treated as ordinary negligence for all purposes or at least for the purpose of com-parison and contribution.

## Contribution.

After considerable study and careful consideration of the first problem and of the consequences of a change or modifi-cation of the present rule,[1] we conclude the amount of liability for contribution of tort-feasors who sustain a com-mon liability by reason of causal negligence should be de-termined in proportion to the percentage of causal negligence attributable to each. We make it plain at the outset that this refinement of the rule of contribution does not apply to or change the plaintiff's right to recover against any defendant tort-feasor the total amount of his damage to which he is entitled. Likewise, we point out that sec. 331.045, Stats., has no application to the doctrine of contribution. *Brown v. Haertel* (1933), 210 Wis. 354, 244 N. W. 633, 246 N. W. 691; *Zurn v. Whatley* (1933), 213 Wis. 365, 251 N. W. 435. The right of one tort-feasor to contribution is not barred because his negligence may be equal to or greater than the negligence of his co-tort-feasor.

---

[1] *Wedel v. Klein* (1938), 229 Wis. 419, 282 N. W. 606. We declined at that time to consider this question.

The problem of contribution is the sharing or the distributing of the loss on equitable principles between joint tort-feasors having a common liability to the injured party when one of the tort-feasors has borne an unjust proportion of the common burden. The crux of the question is whether the present automatic method of determining the number of equal shares between the number of joint tort-feasors involved is as equitable and as just a determination of contribution as determining the amount of the shares in proportion to the percentage of causal negligence attributable to each tort-feasor. We think not.

The doctrine of contribution is an equitable doctrine based on natural justice and well recognized in suretyship and other areas of the law before it was adapted to negligence. As applied in contracts, equality was equity, either on an implied promise of such reimbursement or because of the nature of the liability for the debt. See *Estate of Ryan* (1914), 157 Wis. 576, 147 N. W. 993. Naturally, the pro rata share concept, being part and parcel of the doctrine, was used when the doctrine was applied in the field of negligence. At the time of this transition, negligence was not determined on a comparative basis, and two or more negligent tort-feasors stood in equal relation to each other as codebtors did. *Palmer v. Wick & Pulteneytown Steam Shipping Co., Ltd.* (1894), A. C. 318.

Wisconsin, at a relatively early date, took the forward step by judicial decision and recognized contribution between negligent tort-feasors in *Ellis v. Chicago & N. W. R. Co.* (1918), 167 Wis. 392, 167 N. W. 1048. Even today, Wisconsin is among the minority of states which, by court decisions, recognizes the doctrine of contribution in negligence cases,[2] although some 20 states, by legislation, have

[2] District of Columbia, Iowa, Maine, Minnesota, Louisiana, and Tennessee, along with Wisconsin, represent a minority of jurisdic-

adopted the rule for general application to negligence cases or for more-limited purposes.[3] No other state has determined contribution on a comparative-negligence basis by judicial decision, but by legislation, some states have done so in adopting the 1939 Uniform Contribution Among Tort-feasors Act. 9 U. L. A. 233.

Wisconsin is unique, perhaps, in possessing devices of procedure and practice which make the adoption of the new rule pragmatically sound as well as realistically just. The use of the special verdict is commonplace;[4] automobile liability insurers of tort-feasors may be sued with or without their insureds, and may be interpleaded for contribution in some actions;[5] and we have a comparative-negligence statute to determine the right of a plaintiff guilty of contributory negligence to recover or to reduce the amount of his recovery. Sec. 331.045, Stats.

Sec. 331.045, Stats., must be regarded as an attempt to correlate the amount of recovery to the degree of negligence, at least to a limited extent, and a recognition that justice and fairness demand a comparison of the relative fault of tort-feasors in realistic terms of money, when possible. The history of the equitable basis of the doctrine of

tions which have allowed contribution in one form or another by court decision. See Prosser, Law of Torts (2d ed.), p. 248, sec. 46; Anno. 60 A. L. R. (2d) 1377, 1378.

[3] Arkansas, Delaware, Georgia, Hawaii, Kansas, Kentucky, Maryland, Michigan, Mississippi, Missouri, New Jersey, New Mexico, New York, North Carolina, Pennsylvania, Rhode Island, South Dakota, Texas, Virginia, and West Virginia.

[4] Sec. 270.27, Stats. (see amendment, 11 Wis. (2d) p. v) ; Alton, Special Verdicts in The State Courts, 27 Insurance Counsel Journal (1960), pp. 390, 391.

[5] Sec. 260.11, Stats.; *Tillman v. Great American Indemnity Co.* (7th Cir. 1953), 207 Fed. (2d) 588; *Connecticut Indemnity Co. v. Prunty* (1953), 263 Wis. 27, 56 N. W. (2d) 540; *Ritterbusch v. Sexmith* (1950), 256 Wis. 507, 41 N. W. (2d) 611; *Schultz v. Hastings* (1958), 5 Wis. (2d) 265, 92 N. W. (2d) 846.

contribution has been adequately treated in *Ellis v. Chicago & N. W. R. Co., supra,* and *Farmers Mut. Automobile Ins. Co. v. Milwaukee Automobile Ins. Co.* (1959), 8 Wis. (2d) 512, 99 N. W. (2d) 746.[6] In discussing the right of contribution and its effect, we have often used such terms as his "fair and equitable share," "equity and natural justice," [7] "more than his proportion," [8] "more than his just share," [9] and "more than his proportionate share." [10]

If the doctrine is to do equity, there is no reason in logic or in natural justice why the shares of common liability of joint tort-feasors should not be translated into the percentage of the causal negligence which contributed to the injury. This is merely a refinement of the equitable principle. It is difficult to justify, either on a layman's sense of justice or on natural justice, why a joint tort-feasor who is five percent causally negligent should only recover 50 percent of the amount he paid to the plaintiff from a co-tort-feasor who is 95 percent causally negligent, and conversely why the defendant who is found five percent causally negligent should be required to pay 50 percent of the loss by way of reimbursement to the co-tort-feasor who is 95 percent negligent.

It is argued the rule of equal contribution should not be changed because it is a well-established rule. This specious

---

[6] See also 43 Marquette Law Review (1959), 102; Anno. 60 A. L. R. (2d) 1368; 1960 Wisconsin Law Review, 478; Prosser, Law of Torts (2d ed.), p. 247, sec. 46.

[7] *Wait v. Pierce* (1926), 191 Wis. 202, 209 N. W. 475, 210 N. W. 822; *Frankfort General Ins. Co. v. Milwaukee E. R. & L. Co.* (1919), 169 Wis. 533, 173 N. W. 307.

[8] *Brown v. Haertel* (1933), 210 Wis. 354, 244 N. W. 633, 246 N. W. 691.

[9] *Ainsworth v. Berg* (1948), 253 Wis. 438, 34 N. W. (2d) 790, 35 N. W. (2d) 911; *State Farm Mut. Automobile Ins. Co. v. Continental Casualty Co.* (1953), 264 Wis. 493, 59 N. W. (2d) 425.

[10] *Western Casualty & Surety Co. v. Milwaukee General Construction Co.* (1933), 213 Wis. 302, 251 N. W. 491.

argument assumes, what is, is right, and capitalizes on the natural conservatism and inertia of courts to change any existing rule even after its raison d'etre has ceased to exist.[11] Mr. Justice HOLMES answered the argument:

"It is revolting to have no better reason for a rule of law than that so it was laid down in the time of Henry IV. It is still more revolting if the grounds upon which it was laid down have vanished long since, and the rule simply persists from blind imitation of the past." [12]

Law and justice are not necessarily synonymous. The function of law is to attain and maintain justice. No one denies the proposed change is more just in distributing the loss in proportion to the degree of negligence or fault which caused it. See Prosser, The Thomas M. Cooley Lectures, Fourth Series, Selected Topics on the Law of Torts (1953), at pages 61–66. But it is argued the modification of the contribution rule is one for the legislature and not for the courts because, under sec. 13, art. XIV of the constitution, the common law, as was in force in the territory of Wisconsin at the time we became a state, can only be altered or suspended by the legislature. To show that equal contribution between tort-feasors was established prior to 1848, reliance is placed on the English cases of *Adamson v. Jarvis* (C. P. 1827), 4 Bing. 66, 130 Eng. Rep. 693, *Pearson v. Skelton* (1836), 1 Mees. & W. 504, and *Betts v. Gibbins* (K. B. 1834), 2 Ad. & E. 57, 111 Eng. Rep. 22, but no cases are cited to show what the common-law rule was in the territory of Wisconsin. Contribution, as recognized and as we know it today, springs from the case of *Palmer v. Wick & Pulteneytown Steam Shipping Co., Ltd., supra.* In *Coburn v. Harvey* (1864), 18 Wis. 156 (*147), the court stated, only that part of the common law which was in existence at

---

[11] See Jerome Frank, Courts on Trial (1950), p. 272.
[12] Collected Legal Papers, Oliver Wendell Holmes, p. 187.

the time of the American Revolution and adopted in the territory became part of the common law of Wisconsin. This view was followed by this court in *Cawker v. Dreutzer* (1928), 197 Wis. 98, 133, 221 N. W. 401, where we refused to be bound by an English decision of 1809 on the ground it was not a part of the common law of this state. The *Coburn Case* was cited and its view adopted in the recent case of *Estate of Budd* (1960), 11 Wis. (2d) 248, 105 N. W. (2d) 358. Under this test, we have no English cases recognizing contribution in the field of negligence nor as the law in the territory of Wisconsin.

True, the doctrine of contribution existed in the common law, but certainly it is illogical to suppose the Wisconsin constitution forbade the application of that doctrine to other areas of the law. In any event, we cannot adopt the view that sec. 13, art. XIV of our constitution prohibited this court from now adopting common-law principles or of changing them. Inherent in the common law is a dynamic principle which allows it to grow and to tailor itself to meet changing needs within the doctrine of *stare decisis,* which, if correctly understood, was not static and did not forever prevent the courts from reversing themselves or from applying principles of common law to new situations as the need arose.[13] If this were not so, we must succumb to a rule that a judge should let others "long dead and unaware of the problems of the age in which he lives, do his thinking for him." Mr. Justice DOUGLAS, Stare Decisis, 49 Columbia Law Review (1949), 735, 736. The doctrine of contribution in negligence cases having been adopted through the Wisconsin judicial process in 1918, may be changed or modified by that judicial process.

[13] *Schwanke v. Garlt* (1935), 219 Wis. 367, 263 N. W. 176; *Metropolitan Casualty Ins. Co. v. Clark* (1911), 145 Wis. 181, 129 N. W. 1065; *Dimick v. Schiedt* (1935), 293 U. S. 474, 55 Sup. Ct. 296, 79 L. Ed. 603; *Funk v. United States* (1933), 290 U. S. 371, 54 Sup. Ct. 212, 78 L. Ed. 369.

We do not believe the proposed change would complicate litigation. The arguments, based on the experience of Canada and England and the Uniform Contribution Among Tort-feasors Act, fail to recognize in this state, the lawyers, the courts, and the juries have experience in determining comparative negligence.[14] Most of the negligence cases are now tried with a special verdict and a comparison of contributory negligence, and no insuperable difficulties would be encountered. It is true under the present practice, if the plaintiff is not found causally negligent, no apportionment need be made, but at that point in the lawsuit the form of the verdict has included a comparison question and the jury has been instructed upon its use.[15] In the minority of cases which would not have a comparison question, the new rule would require the jury to determine an additional inquiry on the relative degrees of negligence for contribution purposes. Any change requires some adjustments, but those which we foresee are not sufficient grounds to deny the benefits of the new rule.

The argument based on discouraging settlements of lawsuits is worthy of consideration but seems not to be entirely sound. Specific cases which might be settled under the present rule might not be under the new rule; likewise, some cases which cannot be settled under the present rule are more likely to be settled under the new rule. However, no justification for the retention of a rule exists because it is a convenient blackjack to force a settlement on the part of a defendant who is possibly only slightly negligent. The end does not justify the means. Under the new rule, a defend-

---

[14] In addition to Wisconsin, there are only four states (Arkansas, Mississippi, Nebraska, and South Dakota) which have comparative-negligence statutes of general application.

[15] In *Rashke v. Koberstein* (1936), 220 Wis. 75, 264 N. W. 643, we held it was not error to include in the verdict a question as to comparative negligence which the jury was not to answer unless they first found the plaintiff contributorily negligent.

ant whose potential causal negligence is greater than 50 percent should be more willing to contribute a greater amount to a settlement than formerly. The defendant only slightly negligent should still settle for a sum in proportion to his fault in order to avoid the cost of litigation. In making settlements under the present rule, defendants generally contribute to the settlement in some rough proportion to what they think their negligence is, and if such proportion cannot be agreed upon under the inequities of the present rule, the settlement breaks down. The logic of conforming the rule of contribution to the practice of settlements is apparent. We recognize there is a difference of opinion among members of the bar concerning the effect of the proposed rule on settlements. Our own view is, substantially more settlements will result.

We find no insuperable difficulties in using covenants not to sue under the new rule. We see no greater difficulty in giving releases in settling a suit and giving releases with reservations of rights and covenants not to sue than under the present doctrine. In order for a plaintiff to give a release and covenant which will protect the settling tort-feasor from a claim of contribution, the plaintiff must agree to satisfy such percentage of the judgment he ultimately recovers as the settling tort-feasor's causal negligence is determined to be of all the causal negligence of all the co-tort-feasors. The law relating to releases and covenants not to sue is admittedly complex and confusing [16] but this is hardly a reason for keeping the present rule.

By determining the amount of contribution in relation to negligence, it is claimed socially desirable features of lia-

[16] See *Heimbach v. Hagen* (1957), 1 Wis. (2d) 294, 83 N. W. (2d) 710; *Lewandowski v. Boynton Cab Co.* (1959), 7 Wis. (2d) 49, 95 N. W. (2d) 823; *Kerkhoff v. American Automobile Ins. Co.* (1961), 14 Wis. (2d) 236, 111 N. W. (2d) 91; *State Farm Mut. Automobile Ins. Co. v. Continental Casualty Co.* (1953), 264 Wis. 493, 59 N. W. (2d) 425.

bility insurance might be defeated in cases of an uninsured and financially irresponsible tort-feasor. The argument might be made against any comparative-negligence rule and is based upon the rationale that from a social-policy point of view, the insured tort-feasors ought to bear the risk of loss because only in that manner can there be a broader distribution of loss among all those participating in the general activity which gives rise, at least incidentally, to such losses. While it is true some drivers of automobiles do not carry liability insurance and perhaps not sufficient coverage, it is quite likely, on the law of averages, as many uninsured and under-insured tort-feasors will be on one side of the line as on the other. The argument erroneously assumes the tort-feasors guilty of the greater negligence will be those who have no liability insurance or are underinsured. Until the concept of fault is eliminated from negligence in favor of spreading the loss on the basis of some social policy such as underlies the Workmen's Compensation Act, we do not believe this argument is sound.

*Gross Negligence.*

The history of the development of gross negligence, its reason for existing, the content of the concept, and the inequitable results and consequences of its application have led us to decide the doctrine of gross negligence, as we know it, should be interred in the limbo of jurisprudence alongside the doctrine of assumption of risk in negligence cases. See *McConville v. State Farm Mut. Automobile Ins. Co.* (1962), 15 Wis. (2d) 374, 113 N. W. (2d) 14. Gross negligence is an anomaly and contradiction in terms,[17] and apparently considered in terms of degree, rather than kind

---

[17] *Theby v. Wisconsin Power & Light Co.* (1929), 197 Wis. 601, 613, 222 N. W. 826, 223 N. W. 791; Prosser, Law of Torts (2d ed.), p. 150, sec. 33.

of negligence in our early cases.[18] It gradually waxed strong in flesh and spirit on such terms as "such a degree of rashness or wantonness which evinced a total want of care," or "a willingness to harm although such harm may not have been intended," [19] "rashly," "recklessly," and "wantonly," [20] "little less than an intentional wrong," [21] "willingness to perpetrate injury" or "a purpose to take known chances of perpetrating an injury." [22] Gradually, gross negligence acquired by metamorphosis a new nature:—ordinary negligence lay in the field of inadvertence but gross negligence in the field of actual or constructive intent to injure, and the two did not grade into each other.[23] When the drinking cases increased in number, we reached the point that the concurrence of causal ordinary negligence and intoxication, as a matter of law, was gross negligence.[24]

[18] *Richards v. Sperry* (1853), 2 Wis. 161 (*216); *Ward v. Milwaukee & St. P. R. Co.* (1871), 29 Wis. 144; *Annas v. Milwaukee & N. R. Co.* (1886), 67 Wis. 46, 30 N. W. 282; *Schmolze v. Chicago, M. & St. P. R. Co.* (1893), 83 Wis. 659, 53 N. W. 743, 54 N. W. 106; *Lynch v. Northern P. R. Co.* (1893), 84 Wis. 348, 54 N. W. 610; *Lockwood v. Belle City Street R. Co.* (1896), 92 Wis. 97, 65 N. W. 866.

[19] *Stucke v. Milwaukee & M. R. Co.* (1859), 9 Wis. 182 (*202).

[20] *Lockwood v. Belle City Street R. Co.* (1896), 92 Wis. 97, 65 N. W. 866.

[21] *Schug v. Chicago, M. & St. P. R. Co.* (1899), 102 Wis. 515, 78 N. W. 1090.

[22] *Barlow v. Foster* (1912), 149 Wis. 613, 136 N. W. 822.

[23] *Astin v. Chicago, M. & St. P. R. Co.* (1910), 143 Wis. 477, 128 N. W. 265; *Willard v. Chicago & N. W. R. Co.* (1912), 150 Wis. 234, 136 N. W. 646; *Jorgenson v. Chicago & N. W. R. Co.* (1913), 153 Wis. 108, 140 N. W. 1088; *Haverlund v. Chicago, St. P., M. & O. R. Co.* (1910), 143 Wis. 415, 128 N. W. 273; *Bentson v. Brown* (1926), 191 Wis. 460, 211 N. W. 132.

[24] *Tomasik v. Lanferman* (1931), 206 Wis. 94, 238 N. W. 857; *Christie v. State* (1933), 212 Wis. 136, 248 N. W. 920; *State v. Peckham* (1953), 263 Wis. 239, 56 N. W. (2d) 835; *Ayala v. Farmers Mut. Automobile Ins. Co.* (1956), 272 Wis. 629, 76 N. W. (2d) 563; *Twist v. Aetna Casualty & Surety Co.* (1957), 275 Wis. 174, 81 N. W. (2d) 523.

One of the main reasons for the growth of the doctrine of gross negligence was to ameliorate the hardships of the common-law doctrine of contributory negligence which barred recovery from a tort-feasor to one negligently causing, however slightly, his own injury. However, gross negligence being defined as different in kind and not in degree, could not be compared to ordinary negligence and, hence, contributory negligence was no bar to recovery.[25] Various guest statutes couched in terms of wilfully, wantonly, and recklessly, although not adopted in Wisconsin, also influenced the growth of the doctrine of gross negligence to reach the socially desirable result.[26] The hardship of the common-law doctrine of barring recovery in cases involving ordinary negligence was recognized by the passage of sec. 331.045, Stats., in 1931, and the old principle that a tort-feasor should not profit from his wrongdoing was modified by that section to apply only when the contributory negligence was equal to or greater than the defendant's negligence. This section was a limited recognition of the principle that the negligence of tort-feasors causing an injury ought to be evaluated on a relative fault basis. This recognition is based on the truism that when one tort-feasor is prevented from profiting from his own wrong, you necessarily allow the other tort-feasor, who is not compelled to pay, to profit from his wrong.

[25] See *Astin v. Chicago, M. & St. P. R. Co., supra;* 2 Harper and James, Law of Torts, p. 1215, sec. 22.6; Prosser, Law of Torts (2d ed.), pp. 150, 151, sec. 33.

[26] See, for *e.g.,* Prosser, Law of Torts (2d ed.), p. 148, sec. 33; *Langford v. Rogers* (1936), 278 Mich. 310, 270 N. W. 692; *Dorn v. North Olmsted* (1938), 133 Ohio St. 375, 14 N. E. (2d) 11; *Baker v. Novak* (1956), 144 Cal. App. (2d) 514, 301 Pac. (2d) 257; *Houston Belt & Terminal R. Co. v. Burmester* (Tex. Civ. App. 1957), 309 S. W. (2d) 271; *Nemoitin v. Berger* (1930), 111 Conn. 88, 149 Atl. 233; *Schiltz v. Picton* (1938), 66 S. D. 301, 282 N. W. 519. For an analysis of the doctrine of gross negligence, see 37 Marquette Law Review (1953–1954), 334.

The doctrine of gross negligence as a vehicle of social policy no longer fulfils a purpose in comparative negligence. Much of what constituted gross negligence will be found to constitute a high percentage of ordinary negligence causing the harm. Obviously, we are stressing the basic goal of the law of negligence, the equitable distribution of the loss in relation to the respective contribution of the faults causing it.

In the field of contribution and indemnity, the doctrine of gross negligence has worked inequitably. One guilty of gross negligence can recover no contribution from his joint tort-feasor who is guilty only of ordinary negligence, and a tort-feasor guilty of ordinary negligence can only recover one half of the loss from one guilty of gross negligence whose negligence obviously contributed substantially more to the loss in comparison with ordinary negligence. See *Jacobs v. General Accident Fire & Life Assur. Corp.* (1961), 14 Wis. (2d) 1, 109 N. W. (2d) 462; *Ayala v. Farmers Mut. Automobile Ins. Co., supra.* Thus, whether one guilty of ordinary negligence bore a pro rata part of the loss or none of it or the one guilty of gross negligence bore all the loss or only a pro rata share was not determined by any principle of equity and justice but by the happenstance of which tort-feasor the plaintiff chose to sue and recover from. Upon the principle it was not inequitable for each joint tort-feasor with common liability to bear part of the loss, we held in *Jacobs v. General Accident Fire & Life Assur. Corp., supra,* a defendant ordinarily negligent could not recover on the theory of indemnity from his co-tort-feasor guilty of gross negligence—a result quite different from cases involving contributory versus gross negligence. The irreconcilable rules applying to gross negligence in contribution, indemnity, and contributory-negligence cases cannot stand together upon equitable principles. Only by

abolishing the present concept of gross negligence and considering such conduct as ordinary negligence and treating it in terms of degree on a comparative basis can an equitable and fair result be reached in all cases. To hold gross negligence can be compared in contribution issues but not in contributory-negligence issues, or vice versa, would be unjust and lead to confusion.

The argument is made the doctrine of gross negligence is needed to deter such conduct, but it is doubtful that potential tort-feasors were aware of the rule and, if they were, whether they reflected upon it or their conduct was deterred by it.[27] We recognize the abolition of gross negligence does away with the basis for punitive damages in negligence cases. But punitive damages are given, not to compensate the plaintiff for his injury, but to punish and deter the tort-feasor, and were acquired by gross negligence as accoutrements of intentional torts. Wilful and intentional torts, of course, still exist, but should not be confused with negligence. See sec. 481, p. 1260, Restatement, 2 Torts. The protection of the public from such conduct or from reckless, wanton, or wilful conduct is best served by the criminal laws of the state. What was formerly designated as gross negligence in the criminal law is now defined in the Criminal Code in terms of reckless conduct. See secs. 941.20, Stats., Reckless use of weapons, and 940.06, Homicide by reckless conduct.

We are aware of some problems arising in the field of anticipatory releases and exculpatory clauses and in the area where tort immunity may still exist, but the remedy, if any is needed, lies in the field of law applicable to that subject matter rather than to retain the illogical concept of gross

[27] This is especially true if the wrongdoer's liability insurance policy provided for payment of punitive damages. For a discussion of this point, see Ghiardi, The Liability of an Insurer for Punitive Damages, Wisconsin Continuing Legal Education, Vol. 2, No. 1, p. 39.

negligence as a catalyst to be used by the courts to avoid the results of tort immunities and other doctrines.

It is argued that if the doctrine of gross negligence is abolished, an uninsured tort-feasor can discharge the judgment in bankruptcy but could not if based upon gross negligence. This argument is only partly correct. True, under sec. 17 of the Bankruptcy Act (11 U. S. C. sec. 35), a discharge does not affect the liability for wilful and malicious injury to the person or property of another. But assuming its correctness, the relatively few cases which would involve an uninsured insolvent tort-feasor who might have been found grossly negligent are not sufficient to overcome the justice and benefits of abolishing the doctrine.

The new rules shall apply generally whether the cause of action has heretofore arisen or not except that they shall not apply in the following situations: (1) Where a judgment based upon the old rules has been entered and no motion to vacate it has been made or appeal taken before this date; (2) where verdicts have been rendered sufficient to dispose of the case under the former rules but where application of the new rules would require a new trial not required for other reasons; (3) when settlements have been effected with one co-tort-feasor in such manner as would sufficiently protect him from liability for contribution under the former rules.

*By the Court.*—Judgment appealed from is reversed, with directions to enter a judgment in favor of Edwin Fred Schulze and the Farmers Insurance Exchange for $1,250, which is five percent of $25,000, against Mutual Service Casualty Insurance Company.