TWIST, Plaintiff and Appellant, vs. AETNA CASUALTY & SURETY COMPANY and others, Defendants: MILWAUKEE AUTOMOBILE INSURANCE COMPANY, Defendant and Respondent.*

*February 4—March 5, 1957.*

* Motion for rehearing denied, with $25 costs, on May 7, 1957.

For the appellant there was a brief by *Reiland & Schmidt* of Wisconsin Rapids, and oral argument by *Donald E. Reiland*.

For the respondent there was a brief by *Graves, Chambers & Nash* of Wisconsin Rapids, and oral argument by *Lloyd L. Chambers*.

MARTIN, C. J.   The position of the trial court was:

"As you gentlemen all know that at the close of the testimony the defendant, Milwaukee Automobile Insurance Company, moved the court for a directed verdict dismissing the complaint as to the Milwaukee Automobile Insurance Company with costs.  Also as you know at that time I was of the opinion that that motion should have been granted because the defendant, Waite, was guilty of gross negligence as a matter of law.  That at the request of counsel I let the matter proceed to a conclusion so the jury could render their verdict and the verdict could be made a part of this record in the event there were further proceedings.  I have not changed my mind at all about the matter.  It is my opinion that the defendant, Waite, was guilty of gross negligence as a matter of law.  After a good deal of consideration and study that is still my opinion."

To constitute gross negligence there must be either a wilful intent to injure, or that reckless or wanton disregard of the rights and safety of another or his property, and that willingness to inflict injury, which the law deems equivalent to an intent to injure. *Bentson v. Brown* (1925), 186 Wis. 629, 633, 203 N. W. 380, 38 A. L. R. 1417.

It has been held that the driving of a car by one intoxicated fully responds to all of the elements necessary to constitute gross negligence. *Tomasik v. Lanferman* (1931), 206 Wis. 94, 238 N. W. 857, and much is made in this case of Waite's beer drinking during most of the previous afternoon and evening.  But there is no evidence that Waite was intoxicated or that his drinking had anything to do with his

operation of the automobile. Wettstein's police report noted "odor of liquor from occupants" of the Waite car but stated he did not know whether Waite's ability to drive was impaired; and no alcohol tests were made. Wettstein testified that on the morning after the accident he saw Waite at the hospital and had the following conversation with him:

"I said, what was the trouble, why were you driving so fast. He said I don't know, I was just mad. I said, what were you mad about and he said, I don't know, just mad."

It was Waite's testimony that as he approached the city limits he drove about 40 miles per hour, the permissible speed in that area; that his speed increased to 50 or 55 miles per hour and he noticed his accelerator was stuck; he tried to pull it up by hooking his foot under it, which he had done successfully on previous occasions when it stuck. He testified that he saw no reason to disengage the clutch because he thought he had a clear road ahead.

The motor of the police car was running during the time it was parked in front of the Weigel car, and Wayne Keuntjes, Weigel's passenger, testified that the taillight on the police car "wasn't too bright because it was pretty cold that night and the exhaust from the car was a kind of fog around there."

Calvin Powell testified that he approached Weigel and the police car from the west before the accident and did not see any taillights on the squad car; that at a distance of a block or less he saw the exhaust, then noticed the cars, and had to swerve out to avoid the squad car.

The evidence as a whole was susceptible of conflicting inferences and thus the question of gross negligence was for the jury. It was one o'clock in the morning; there was little if any traffic; Waite was traveling on his own side of the street; and the jury was entitled to infer that his failure to see and avoid the police car was due to camouflage of the

exhaust and his preoccupation with the accelerator rather than a reckless and wanton disregard of the safety of others.

So far as the officer's negligence is concerned, this too was for the jury. The evidence is undisputed that the police car was parked at an angle in the street with its rear extending into the lane of eastbound traffic. No emergency existed which required the officer to park in that position; he merely wished to get out and warn Weigel about failure to dim his lights. Wettstein's only explanation for his failure to use the red dome light was that he did not consider it necessary "When we weren't blocking any line of traffic or obstructing any lane of traffic." Yet by his own measurements and estimates the rear of the patrol car occupied a considerable portion of the eastbound traffic lane. Weigel testified that during the time the police car was parked there he saw two or three other cars coming from the west that "had to cut out to avoid hitting the squad car," and Keuntjes testified to the same fact. Waite's car struck that part of the police car which extended into the eastbound lane; Weigel's car, parked parallel to the curb, was not involved. In parking as he did, Wettstein was violating a safety statute, and he failed to give any warning that the police car was illegally parked. Under the circumstances the jury could properly conclude that its position on the road was a substantial factor in causing the accident and appellant's injuries.

The jury apportioned the negligence 50 per cent to Waite and 50 per cent to Wettstein. It was the trial court's view that the equal apportionment indicated perversity, but that view was based on its opinion that Waite was guilty of gross negligence. If the trial court had been correct in its opinion that the evidence required a finding of gross negligence on Waite's part, we could agree that the findings on apportionment were perverse. But, as stated above, the evidence did not require a finding of gross negligence. It is not for us to say that the ordinary negligence of Waite exceeded that

of Wettstein. The comparison was for the jury and, upon the evidence we have referred to, the jury was entitled to find that Waite and Wettstein contributed equally to the appellant's injuries.

It is also argued by the respondent that a covenant not to sue given by appellant to Waite and his insurer operates to release Wettstein and his insurer. This is a third-party action. The jury found that the joint negligence of Waite and Wettstein caused appellant's injuries. Both are liable. This and other arguments of the respondent are based on the premise that Waite was grossly negligent. Having determined that the jury findings on negligence must stand, no discussion of such arguments is necessary.

With respect to the award of damages, however, it is our considered opinion that $16,500 is excessive. The evidence shows that appellant received numerous lacerations to the face and head which necessitated 66 stitches, and had four teeth knocked out, requiring surgery and a denture. He also sustained a small fracture of an anklebone which his doctor testified resulted in "possibly three per cent" disability in the right ankle. He was hospitalized for less than two weeks.

Appellant was not employed at the time of the accident. He testified he lost thirteen weeks of G. I. unemployment compensation at $26 a week, or $338, and since then has been employed; that since the accident he engaged in all of the activities and sports which he previously engaged in, with the exception of playing basketball. He testified that if he is on his feet all day doing heavy work, his ankle is painful when he walks, but that he had gone hunting and fishing during the summer and fall following the accident, sometimes walking through the woods for most of a day.

With respect to the injuries to the face, the doctor testified he felt he got a very good result from the suturing and that the scars would fade more as time went on and become the color of the skin; that plastic surgery might possibly im-

prove appellant's appearance but that he would not recommend it. There is no evidence that the scarring amounted to such disfigurement that it would impair his enjoyment of life or ability to earn a living.

Considering the loss of $338 in unemployment compensation, the permanent denture to replace four teeth, and the slight disability in the ankle which interfers with none of appellant's activities except playing basketball, it is obvious that all but a comparatively small amount of the award was meant to compensate him for pain, suffering, and scars. In our opinion, $7,000 is the least amount that a jury properly instructed would probably award upon the facts shown. The trial court is instructed to give appellant the option of accepting, within twenty days after receipt of the remittitur, $7,000 plus $723.21 hospital and medical expenses, or a new trial on the question of damages only.

*By the Court.*—Judgment reversed, and cause remanded with instructions to reinstate the jury verdict on the negligence questions and for further proceedings not inconsistent with this opinion.

* Motion for rehearing denied, with $25 costs, on May 7, 1957.