DODGE, Appellant, v. DOBSON and another, Respondents.

*October 2—October 29, 1963.*

For the appellant there was a brief and oral argument by *K. Thomas Savage* of Kenosha.

For the respondents there was a brief by *Vaudreuil & Vaudreuil* of Kenosha, and oral argument by *Leo E. Vaudreuil.*

WILKIE, J. The sole issue presented on this appeal is whether the lower court erred in refusing to increase the amount of $500 awarded to the plaintiff by the jury for personal injuries, including both past and future pain and suffering, future wage loss, and permanent disability.

On the day of the accident, Mrs. Dodge consulted with Dr. Gilbert Schwartz, a general physician. Upon initial examination, he found no broken bones and suggested that she go home and rest for several days. On the following day she returned to Dr. Schwartz, complaining of stiffness in her legs and pain from bruises on her left leg and back. Upon Dr. Schwartz's recommendation, Mrs. Dodge was hospitalized for a period of thirteen days. While in the hospital she was treated with hot packs for her bruises on her hip, leg, and back. She was also given pills to reduce the pain resulting from these injuries.

On November 11, 1959, she was discharged from Dr. Schwartz's care. She returned to work in January, 1960. She continued to experience pain in her left leg and in her lower back region. She found it impossible to do any heavy lifting in her job as a cook in a restaurant.

Approximately a year from the date of the accident, on September 19, 1960, she went to see Dr. Chester A. Sattler, an orthopedic surgeon in the city of Kenosha. She informed Dr. Sattler that she had been struck by an automobile on September 16, 1959. She then gave the doctor a history of various symptoms she had experienced subsequent to that accident. She told him that she was extremely stiff and sore and that she especially experienced pain in her left leg and left hip area. After receiving this verbal report, Dr. Sattler made an X-ray examination of her lower back area. He testified that the X ray revealed a "moderate" degree of arthritic change in the lower back region and he further testified that this arthritic condition had been in existence for at least a year prior to the accident. He testified that the X-ray examination revealed a degenerative disc condition, which also had existed prior to the accident. He testified that in recounting her history, Mrs. Dodge had told him that prior to the accident she was able to function effectively in relation to her job as a cook and her tasks as a housewife.

During this September 19, 1960, examination, Dr. Sattler made an examination of the following objective indices of lower back injury. (1) He discovered "a little tenderness" at the lumbosacral joint, *i.e.,* the belt-line joint. (2) A straight leg raising test revealed that she was able to lift her left leg with "no particular amount of discomfort." (3) There was no reflex change affecting the Achilles' tendon. (4) She was able to bend forward in a "relatively normal fashion."

Dr. Sattler also discovered some tenderness in the left trapezius muscle, *i.e.,* the large neck muscle.

Based upon this examination, Dr. Sattler prescribed a lumbosacral support for her back.

On November 9, 1960, Dr. Sattler hospitalized Mrs. Dodge. During this period of hospitalization she was placed in traction. She was discharged from the hospital on November 18, 1960. At this time Dr. Sattler noted that she was "able to bend well" and that her "straight leg raising was quite good."

Throughout December of 1960 and January of 1961, Dr. Sattler continued to treat Mrs. Dodge. During this period, tenderness in the lumbosacral joint persisted. He also noted that she could bend with less ease than she had exhibited in the initial examination in September of 1960. However, there were still no reflex changes and straight leg raising was only "slightly restricted." Dr. Sattler continued to examine Mrs. Dodge periodically through March, 1961, until the first part of 1962. During this period the objective indices of lower back injury remained constant, although Mrs. Dodge continued to complain of subjectively experienced pain. In July of 1962 Dr. Sattler noted changes in objective criterion which indicated a progressive worsening of her lower back condition. On his final examination on September 24, 1962 (shortly before the trial) Dr. Sattler noted the following changes in the objective indices of lower back injury. (1) She was not able to bend as well as before. (2) Straight leg raising was restricted to an angle of "about 45° to 50°." (3) There was continued tenderness in the lumbosacral joint. (4) She had an absence of reflex in the right Achilles' tendon.

On the trial, Dr. Sattler testified:

"From the history given me I feel this lady's low back problem is as a result of the automobile accident as she stated it to me on September 16, 1959, and this must be qualified to a certain extent in that this lady does have some arthritis in her back and some degenerative disc problem which

was in evidence when she was initially seen. It is my opinion that in addition to these two things she has a herniated disc and I feel this disc protrusion is most likely from the accident and that the increase in her complaints are as a result of the accident by aggravation of this pre-existing degenerative disc disease and the pre-existing arthritis."

In the end Dr. Sattler was unable to state to a reasonable medical certainty what amount of her disability (estimated by Dr. Sattler to be about 20 to 25 percent) was due to the accident and what amount was due to the normal deterioration of her arthritic and disc condition.

When asked to raise the verdict for personal injuries from $500 to the amount deemed to be reasonable, the trial court observed that Mrs. Dodge had pre-existing physical disabilities before the accident and that the testifying doctor found no objective symptoms of her injury and had to rely upon her history as given by her. He concluded that "it would seem to me that the jury had a right to determine, and in fact did determine, that the permanency of her complaint was not a result of the trauma but was the result of natural conditions." Accordingly, he denied the motion to increase the damages for personal injuries.

The appellant asks us to invoke the rule in *Powers v. Allstate Ins. Co.*[1] to extend an option for an additur to the plaintiff in the amount determined by this court. It is true that we have held that under proper circumstances this court will grant such an option. Thus in *Cordes v. Hoffman*[2] we held, at page 241 :

"If this court agreed with the plaintiffs that the amount of damages was inadequate it could exercise its power to determine the reasonable amount of damages under the *Powers Case* and grant a new trial with an option to the defendants to accept judgment against them for such amount. See *Rupp*

[1] (1960), 10 Wis. (2d) 78, 102 N. W. (2d) 393.
[2] (1963), 19 Wis. (2d) 236, 120 N. W. (2d) 137.

*v. Travelers Indemnity Co.* (1962), 17 Wis. (2d) 16, 115 N. W. (2d) 612." [3]

However, on this record we do not believe that this is a proper case for invoking the rule in *Powers* and for granting an option for an additur.

We believe that on this record the trial court quite reasonably could have reached the conclusion it did about the damage verdict. The amount awarded was not clearly inadequate considering the injuries proven.

The record further reveals that Dr. Gilbert Schwartz, the physician who attended Mrs. Dodge immediately after her accident, was not called to testify by the plaintiff. We have held that if a witness who may potentially supply information of strong probative value for the plaintiff's case is not brought forth by the plaintiff, a trier of fact may infer that his information would be adverse to the plaintiff's cause.[4] As the trier of fact, the jury here could have inferred that such information as Dr. Schwartz was in a position to give would be adverse to the plaintiff. By the same token, a Dr. Schlenker examined the plaintiff on behalf of the defendants and was not called to testify. Here, too, an inference could have been drawn, this time that his testimony, if it had been given, would have been adverse to the defendants.

Since the jury did not have the benefit of the testimony of either of these doctors, it was free to draw conflicting inferences from their absence as witnesses in weighing the testimony of Dr. Sattler.

*By the Court.*—Judgment affirmed.

---

[3] See also *Wendel v. Little* (1961), 15 Wis. (2d) 52, 112 N. W. (2d) 172.

[4] *Lubner v. Peerless Ins. Co.* (1963), 19 Wis. (2d) 364, 120 N. W. (2d) 54; *Feldstein v. Harrington* (1958), 4 Wis. (2d) 380, 90 N. W. (2d) 566.