PARCHIA (Cora L.), Appellant, v. PARCHIA (Earl) and another, Respondents.

*September 1—September 29, 1964.*

662

For the appellant there were briefs by *Niven, Mullaney & Schoetz* of Milwaukee, and oral argument by *David J. Schoetz*.

For the respondents there was a brief by *Hayes & Hayes* of Milwaukee, and oral argument by *Tom E. Hayes*.

CURRIE, C. J.   These two issues are presented by this appeal:

(1) Is there credible evidence to sustain the jury's finding that defendant Parchia was grossly negligent in the operation of his automobile within the meaning of gross negligence as used in the Wyoming guest statute?

(2) If the foregoing question is answered in the affirmative, did the trial court abuse its discretion in finding inadequate the jury's finding of $2,829.50 damages for plaintiff's injuries and in fixing $8,500 as a reasonable amount to measure such damages?

By footnote in *Brunke v. Popp* (1963), 21 Wis. (2d) 458, 461, 462, 124 N. W. (2d) 642, we called attention to *Babcock v. Jackson* (1963), 12 N. Y. (2d) 473, 191 N. E. (2d) 279, wherein the New York court abandoned the traditional choice-of-law rule that the substantive rights and liabilities arising out of a tortious occurrence are determined by the place of the tort and refused to apply Ontario's guest statute to an automobile accident which had occurred in Ontario involving residents of New York. In lieu of the discarded rule the New York court adopted the principle that the controlling law to be applied was that of the state having the most significant contacts. We have concluded, however, that the instant case is not a proper one in which

to consider the advisability of adopting the principle enunciated in the *Jackson Case*. In the first place, plaintiff acquiesced in trying her action on the theory that the Wyoming guest statute was applicable. Secondly, because of our conclusion that the verdict of the jury on the negligence issue must be sustained, any determination made with respect to the applicable choice-of-law rule would not affect the result.

*Gross Negligence Issue.*

Title 31, sec. 31–233, 1957 Wyoming statutes, provides:

"No person transported by the owner or operator of a motor vehicle as his guest without payment for such transportation shall have a cause of action for damages against such owner or operator for injury, death or loss, in case of accident, unless such accident shall have been caused by the gross negligence or wilful and wanton mis-conduct of the owner or operator of such motor vehicle and unless such gross negligence or wilful and wanton mis-conduct contributed to the injury, death or loss for which the action is brought."

A most thorough explanation of how the Wyoming court defines the term "gross negligence" as used in this statute is set forth in the recent case of *McClure v. Latta* (Wyo. 1960), 348 Pac. (2d) 1057. We quote therefrom as follows (p. 1061):

"However, this court has heretofore provided the definition applicable to this jurisdiction, and there is no occasion to depart therefrom. In *Arnold v. Jennings*, 75 Wyo. 463, 296 P. 2d 989, 990, we defined gross negligence as indifference to present legal duty and utter forgetfulness of legal obligations. See also *Hawkins v. L. C. Jones Trucking Co.*, 68 Wyo. 275, 232 P. 2d 1014. Prior to that time in *Mitchell v. Walters*, 55 Wyo. 317, 100 P. 2d 102, 107, we had quoted two cases from other states which accorded with our views:

" '. . . Gross negligence is a manifestly smaller amount of watchfulness and circumspection than the circumstances require of a person of ordinary prudence. But it is something less than the willful, wanton and reckless conduct which renders a defendant who has injured another liable to the latter even though guilty of contributory negligence, or which renders a defendant in rightful possession of real estate liable to a trespasser whom he has injured. It falls short of being such reckless disregard of probable consequences as is equivalent to a willful and intentional wrong. Ordinary and gross negligence differ in degree of inattention, while both differ in kind from willful and intentional conduct which is or ought to be known to have a tendency to injure. . . . [*Altman v. Aronson,* 231 Mass. 588, 121 N. E. 505, 506, 4 A. L. R. 1185.] . . .'

" '. . . The element of culpability which characterizes all negligence is, in gross negligence, magnified to a high degree as compared with that present in ordinary negligence. Gross negligence is manifestly a smaller amount of watchfulness and circumspection than the circumstances require of a prudent man. But it falls short of being such reckless disregard of probable consequences as is equivalent to a willful and intentional wrong. Ordinary and gross negligence differ in degree of inattention, while both differ in kind from willful and intentional conduct which is or ought to be known to have a tendency to injure. [In *Shaw, Adm'r v. Moore,* 104 Vt. 529, 162 A. 363, 374, 86 A. L. R. 1139.]' "

Our Wisconsin definition of gross negligence was quite different from that adopted by the Wyoming court. In *Twist v. Aetna Casualty & Surety Co.* (1957), 275 Wis. 174, 178, 81 N. W. (2d) 523, in an opinion by Mr. Chief Justice MARTIN, this court stated:

"To constitute gross negligence there must be either a wilful intent to injure, or that reckless or wanton disregard of the rights and safety of another or his property, and that willingness to inflict injury, which the law deems equivalent to an intent to injure. *Bentson v. Brown* (1925), 186 Wis. 629, 633, 203 N. W. 380, 38 A. L. R. 1417."

As pointed out in *Bielski v. Schulze* (1962), 16 Wis. (2d) 1, 15, 114 N. W. (2d) 105, under the view enunciated in the more recent Wisconsin cases, ordinary negligence lay in the field of inadvertence, but gross negligence lay in the field of actual or constructive intent to injure. Thus under the Wisconsin view, gross negligence differed in kind from ordinary negligence. The view of many other courts, is that the two do not differ in kind but only in degree and gross negligence is merely negligence of an aggravated character. See Comment, An Analysis of Gross Negligence, 37 Marquette Law Review (1954), 334, 339. It is apparent from the above quotation from *McClure v. Latta, supra,* that the Wyoming court holds the latter view.

While the *Bielski Case* abolished the concept of gross negligence in negligence cases arising under Wisconsin law, that holding is entirely inapplicable to a situation where a Wisconsin court applies the substantive law of another state.

We will now review the evidence adduced at the trial to ascertain whether it will support the jury's finding that defendant Earl Parchia was grossly negligent under the Wyoming court's definition of gross negligence.

After visiting with friends at Compton, California, during the afternoon and evening of August 26, 1960, plaintiff and her husband (hereinafter the "defendant") began their journey back to Wisconsin about midnight that same evening. Defendant did all the driving. He drove continuously from midnight to 4 p. m., August 27, 1960, stopping only for gas. Plaintiff and defendant stayed at a motel from 4 p. m. to 11 p. m., when they arose and resumed their journey. During this seven-hour period, defendant had the car checked and filled with gasoline; he was awakened several times during his attempt to sleep by noise from an adjoining restaurant and from trucks on a nearby highway; he showered and shaved prior to 11 p. m.

Plaintiff and defendant left the motel around 11 p. m. and drove to Salt Lake City, Utah, where they stopped to eat. At the restaurant defendant had his half-pint thermos filled with coffee. The parties resumed their journey around midnight. Plaintiff, sitting in the front seat, was advised by defendant to relax and go to sleep. Between Salt Lake City and Wamsutter, Wyoming, defendant made one stop for gasoline without getting out of the car. Except at the gasoline stop, plaintiff slept during the entire journey on the morning of the accident. Defendant drove and listened to the radio until about 4 a. m. when he began to feel drowsy. Thereupon he began to sip coffee. After the coffee was consumed defendant continued to get drowsy and at various intervals he would lower the window to relieve the drowsiness. He was unable to keep the window down because of the cold mountain air. With the window closed his drowsiness returned and as a result he nearly ran into the rear end of a preceding station wagon. He avoided colliding with it by swerving around and passing it. He testified that he was traveling at a speed of about 75 miles per hour. In spite of the near collision defendant felt he could make it to Rawlins, Wyoming. After passing the station wagon he observed a sign which he thought read, "16 miles to Rawlins." After he passed the sign, he did not remember anything until the accident. Defendant's car missed a curve in the road and struck a truck which was parked on a service area adjoining the highway. Defendant awakened after the impact of the accident, finding himself in a prairie off the highway.

In applying the Wyoming guest statute, the Wyoming court apparently has not been called upon to decide whether a driver who falls asleep at the wheel after repeated warnings of drowsiness may be guilty of gross negligence if so found by a jury verdict. However, as appears from *McClure*

*v. Latta, supra,* Wyoming follows the Massachusetts defi-
nition of gross negligence as stated in *Altman v. Aronson*
(1919), 231 Mass. 588, 121 N. E. 505, 4 A. L. R. 1185.
We assume, therefore, that any decision of the Massachu-
setts court which applies such definition to a situation of a
driver falling asleep after having experienced drowsiness,
would be followed by the Wyoming court. The Massachu-
setts court in *Flynn v. Hurley* (1955), 332 Mass. 182, 185,
124 N. E. (2d) 810, dealt with this problem and summar-
ized the holdings of the applicable Massachusetts cases as
follows:

"In *Carvalho v. Oliveria,* 305 Mass. 304, 305–306 [25
N. E. (2d) 764, 765], it was said, 'Without undertaking to
lay down a rule that falling asleep is always evidence of
gross negligence, at least it may be said that the danger of
driving while heavy with drowsiness is so extreme and so
self-evident that one who, with knowledge that he is in that
condition, persists in driving without making the necessary
effort fully to arouse himself can be found to be grossly
negligent.' This language has been quoted with approval
in subsequent decisions. *Belletete v. Morin,* 322 Mass. 214,
217 [76 N. E. (2d) 660]; *Mullaney v. White,* 329 Mass.
464, 466 [109 N. E. (2d) 158]. See also *Moore v. Pat-
rone,* 298 Mass. 198, 200 [10 N. E. (2d) 69]. In all of
these cases, where it was held that a finding of gross negli-
gence was warranted, there was evidence of intermittent
drowsiness or sleep. In other words, there was something
more than mere falling asleep. It is possible that sleep may
sometimes overtake its victim unawares and we think that
it would be going too far to say that falling asleep without
more is evidence of gross negligence. To the extent that
the case of *Blood v. Adams,* 269 Mass. 480 [169 N. E.
412], is authority for the proposition that merely falling
asleep at the wheel is evidence of gross negligence we are
not disposed to follow it. We prefer the rule enunciated in
*Carvalho v. Oliveria.*"

The record in this case presented a jury issue as to
whether defendant Parchia persisted in driving while af-

fected with drowsiness without making the necessary effort to fully arouse himself. Upon viewing the facts that defendant continued to drive after nearly striking the station wagon and that thereafter he fell asleep, the jury could infer that the sipping of the half pint of coffee and the intermittent lowering of the window to let in cool air was an insufficient effort by defendant to fully arouse himself. We conclude, therefore, it was error for the trial court to have directed a verdict.

*Inadequacy of Damages.*

In its memorandum opinion the trial court stated that, had liability been established, it would have applied the rule of *Powers v. Allstate Ins. Co.* (1960), 10 Wis. (2d) 78, 102 N. W. (2d) 393, and ordered a new trial as to damages with an option to defendants to accept judgment against them wherein the damages for personal injuries would be increased from $2,829.50 to $8,500. If the rule of the *Powers Case* is applicable to inadequate jury awards of damages with the option being extended to the defendant to accept judgment for a reasonable amount in lieu of a new trial, then the issue before the court is confined to determining whether the trial court abused its discretion in determining that $2,829.50 was inadequate and $8,500 was a reasonable amount. *Boodry v. Byrne* (1964), 22 Wis. (2d) 585, 126 N. W. (2d) 503, and *Lucas v. State Farm Mut. Automobile Ins. Co.* (1962), 17 Wis. (2d) 568, 571, 117 N. W. (2d) 660.

While subsequent to our decision in *Powers* our court has never directly applied the rule of that case to an inadequate jury award of damages, this court stated in *Cordes v. Hoffman* (1963), 19 Wis. (2d) 236, 241, 120 N. W. (2d) 137:

"The plaintiffs contend the damages awarded Mary E. Cordes were inadequate and ask this court under *Powers v. Allstate Ins. Co.* (1960), 10 Wis. (2d) 78, 102 N. W. (2d) 393, to extend an option for an additur to the defendants in the amount determined by this court. If this court agreed with the plaintiffs that the amount of damages was inadequate it could exercise its power to determine the reasonable amount of damages under the *Powers Case* and grant a new trial with an option to the defendants to accept judgment against them for such amount."

The above statement was approved in *Dodge v. Dobson* (1963), 21 Wis. (2d) 200, 204, 124 N. W. (2d) 97. See also Wilkie, Personal Injury Damage Verdicts, 47 Marquette Law Review (1963–1964), 368; Ghiardi, Personal Injury Damages—Excessive ·or Inadequate Awards, Vol. 1, No. 2, Wisconsin Continuing Legal Education (April 1961), p. 27; Carlin, Remittiturs and Additurs, 49 West Virginia Law Quarterly (1942–1943), 1; Comment, Correction of Damage Verdicts by Remittitur and Additur, 44 Yale Law Journal (1934–1935), 318.[1] With respect to whether a plaintiff can be heard to complain about defendant's election to accept the option and permit judgment to be entered against him for a larger amount than awarded by the jury, see Anno. 56 A. L. R. (2d) 213.

---

[1] The rule with respect to granting an option in connection with an order for a new trial directed because of an inadequate verdict, which existed prior to *Powers v. Allstate Ins. Co., supra,* is to be found in *Bohlman v. Nelson* (1958), 5 Wis. (2d) 77, 92 N. W. (2d) 345; *Risch v. Lawhead* (1933), 211 Wis. 270, 248 N. W. 127; *Reuter v. Hickman, Lauson & Diener Co.* (1915), 160 Wis. 284, 151 N. W. 795. The option extended was to the plaintiff to accept the least amount that an unprejudiced jury properly instructed would probably find. In *Gosczinski v. Carlson* (1914), 157 Wis. 551, 147 N. W. 1018, the trial court extended the option to the defendant to elect to permit judgment to be entered against him for a larger amount than the jury awarded, but the supreme court found it unnecessary to pass on the issue of whether this constituted error.

The trial court in its memorandum opinion carefully and fairly reviewed the evidence bearing on plaintiff's damages for personal injuries. Plaintiff's injuries can be summarized as follows: Broken left arm; both ankles broken; damage to her left foot and to bones in that foot; a fracture in the right shoulder and right hip; ¾ inch in length and 1⁄32 inch in width scar in the subauricular area; a ¾-inch loop-shaped scar containing a pedicle flap also in the subauricular area; a 1¼ inch in length and ⅛ inch in width hypertrophic scar over the horizontal ramus of the mandibula of the jawbone; a 1½ inch in width and 1 inch in length horizontal scar below the right eye; a ¾ inch in length and hairline in width perpendicular scar somewhat indurated in the right facial oral groove; a 1 inch in length and ¼ inch in width friction-type scar in the right forehead area; a scar in the submental area, under the left side of her chin which extended into the left submandibular area. The medical testimony indicated that there would be a five percent permanent disability to the right foot, and that the scars on the face would be permanent. Plaintiff had suffered substantial pain for some time following the accident and continued to have occasional pain in the left leg, ankle, and foot at time of trial. At the time the accident occurred she was thirty years of age and a teacher in the Milwaukee public schools.

On this record we find no abuse of discretion in the trial court's determining that $2,829.50 was an inadequate award for plaintiff's personal injuries, and that $8,500 would be a reasonable amount to award for such damages. Therefore, there must be a new trial directed as to damages with an option to defendants in lieu thereof to elect to have judgment entered against them for a larger amount than awarded by the jury.

If it were not for the $10,000 policy limit of the defendant insurance company's policy the option amount exclusive

of costs and interest would be $11,670.50 (the $8,500 determined by the trial court as a reasonable sum for plaintiff's personal injuries plus the $3,170.50 awarded by the jury for loss of earnings). However, because of the complication of the $10,000 policy limit, the option figure with respect to defendant insurance company cannot exceed $10,000 exclusive of interest and costs. Furthermore, plaintiff in the prayer of her complaint only demanded $10,000 damages and may not be desirous of having judgment entered against her husband in excess of that amount. In view of these complications the cause will be remanded for the trial court to fashion the option to be included in the order for new trial.

*By the Court.*—Judgment reversed, and cause remanded with directions to reinstate the verdict with respect to the issues of negligence, and to enter an order for a new trial on the issue of damages only, such order to include an option to the defendants to permit judgment to be entered against them in an amount to be fixed by the circuit court, all consistent with this opinion.