O. E. SPAFFORD, TRUSTEE FOR
NEXT OF KIN OF PAUL VERGELDT AND
JOHN PHILIP ANDERSON, v. JERRY HAHN.

142 N. W. (2d) 727.

May 20, 1966—Nos. 40,010, 40,011.

---

*Johanson, Winter, Lundquist & Sherwood* and *Marvin E. Lundquist,* for appellants.

*Peterson & Holtze* and *Robert C. Holtze,* for respondent.

THOMAS GALLAGHER, JUSTICE.

Actions for the death of Paul Vergeldt and John Philip Anderson who were guest passengers in an automobile owned and operated by defendant, Jerry Hahn, and who met death by drowning on February 3, 1963, when the automobile sank through an opening in the ice on Lake Traverse which borders a part of Minnesota and South Dakota. At the time of the accident defendant and Vergeldt were 21 years of age and Anderson was 19. Pursuant to Minn. Const. art. 2, § 2,[1] the actions were in-

---

[1] Minn. Const. art. 2, § 2, provides in part: "The State of Minnesota shall have concurrent jurisdiction * * * on all * * * waters bordering on the said State of Minnesota, so far as the same shall form a common boundary to said State, and any other state or states now or hereafter to be formed by the same; * * *."

The Enabling Act which permitted Minnesota to become a state (Act of Congress February 26, 1857), found in 11 Stat. 166, defines part of the western Minnesota border as: "* * * [T]hence [up] the main channel of

stituted and consolidated for trial in Traverse County, Minnesota. There the jury returned verdicts for defendant. These appeals are from the judgments for defendant entered subsequent to an order denying plaintiffs' motions for judgments notwithstanding the verdicts or for a new trial which were based on the ground that the court had erred in submitting to the jury issues relative to decedents' assumption of risk.

Under Minn. St. 605.065 [2] defendant seeks review of an order which denied motions of his made at the commencement of trial for dismissal of the actions on the ground that they failed to state any cause under South Dakota law or, in the alternative, to apply South Dakota law at the Minnesota trial. These motions were based upon South Dakota Code 1939, § 44.0362,[3] which provides that a guest passenger in an automobile

---

said river to Lake Travers; thence up the centre of said lake to the southern extremity thereof."

The act further provided as follows: *"And be it further enacted,* That the said State of Minnesota shall have concurrent jurisdiction on * * * all other rivers and waters bordering on the said State of Minnesota, so far as the same shall form a common boundary to said State and any other State or States now or hereafter to be formed or bounded by the same; * * *."

[2] Minn. St. 605.065 provides: "A respondent may obtain review of a judgment or order entered in the same action which may adversely affect him by serving a notice of review on all parties to the action who may be affected by the judgment or order. The notice of review shall specify the judgment or order to be reviewed and shall be served upon the other parties within 15 days after service of the notice of appeal on that respondent and thereafter shall be filed with the clerk of the supreme court."

[3] Section 44.0362 provides: "No person transported by the owner or operator of a motor vehicle as his guest without compensation for such transportation shall have cause of action for damages against such owner or operator for injury, death, or loss, in case of accident, unless such accident shall have been caused by the willful and wanton misconduct of the owner or operator of such motor vehicle, and unless such willful and wanton misconduct contributed to the injury, death, or loss for which the action is brought; and no person so transported shall have cause of action if he has willfully or by want of ordinary care brought the injury upon himself."

In Melby v. Anderson, 64 S. D. 249, 254, 266 N. W. 135, 137, it was stated: "* * * Willful and wanton misconduct * * * means something more than negligence. They describe conduct which transcends negligence and is

shall have no action against its owner for damages arising out of an accident in which the automobile is involved unless the accident is caused by the willful and wanton misconduct of the operator. It is defendant's contention that since the accident happened in that part of the lake which is within the territorial limits of South Dakota [4] (conceded by plaintiffs) the laws of that state became applicable; and that there being no evidence of willful and wanton misconduct on his part, plaintiffs would not be entitled to recover even though the Minnesota court had jurisdiction to try the case.

The accident occurred shortly after 2:30 a. m. February 3, 1963. Defendant and decedents were friends and lifelong residents of Roberts County, South Dakota. Their homes were all within 8 miles of the northerly part of Lake Traverse. They had attended high school together at Rosholt, South Dakota, and at the time of the accident were home for a weekend visit from South Dakota State College at Brookings, which they attended. During the evening of February 2, 1963, prior to the accident, defendant, accompanied by decedents, had driven his automobile to The Ranch, a dancehall in Sisseton, South Dakota, where a dance was in progress. After the dance, defendant drove the group to a restaurant known as Ike's Chicken Shack near Browns Valley, Minnesota, on the east side of Lake Traverse. After they ate there, it was decided to return to Rosholt by driving westerly across the lake toward Stevens Point, South Dakota, where a landing for lake automobile travel is maintained during the winter. From Ike's Chicken Shack they first traveled north on a highway for a few hundred feet and then turned west from it onto a private road which led to the lake. After traveling about 300 feet on the road, the automobile became stuck in the snow. Decedents then got out and pushed it free while defendant continued to operate it. Afterwards Vergeldt walked toward the lake on the private road to ascertain driving conditions and then signaled for defendant to proceed toward the lake.

---

different in kind and characteristics. They describe conduct which partakes to some appreciable extent, though not entirely, of the nature of a deliberate and intentional wrong."

[4] See footnote 1, *supra*.

With defendant driving and both decedents in the front seat with him, the car then proceeded westerly onto the lake towards Stevens Point.

The night was somewhat dark, although there was moonlight. There was no driving route or path for automobiles across the lake at the point where the parties entered upon it. It was practically clear of snow and glare ice covered most of it. Defendant testified that he was familiar with the lake, had often fished on it, and as a plane passenger had flown over it during the winter months, and that in his opinion there was nothing hazardous in his driving onto it at the time in question; that as he traveled over it he was aware that he was driving on glare ice; that his lights were then on high beam and that he followed no roadway or driving route on the lake as he drove along; that after continuing westerly some distance towards Stevens Point, he had turned north on the lake, intending to travel on its westerly side until reaching "Eggers Resort" where they would leave the lake, as this would bring them much closer to Rosholt than would leaving the lake at Stevens Point; that as he traveled northerly his speed had gradually increased up to 35 miles per hour and that he alone had had full control of the automobile; that after traveling some distance to the north and as he approached Jenson's Island, a short distance from the westerly border of the lake, suddenly he had observed an open spot on the ice about two car lengths in front of him; that he then knew that at his speed it would be futile to apply his brakes or turn to the right or left, and so he did neither; that in consequence the automobile continued forward and slid into the open spot on the lake where it sank; that he managed to open the car door and reach the surface but that decedents apparently were unable to follow him; that he hurried for help but by the time it arrived it was too late to revive them.

At the close of the testimony plaintiffs requested the court to instruct the jury that the evidence established, as a matter of law, defendant's negligence as a proximate cause of the accident; and that, as a matter of law, defendant had failed to sustain the burden of proving that decedents were negligent or that any negligence of theirs was a proximate cause of the accident; and that, as a matter of law, defendant had failed to establish that they had assumed the risks attendant to the accident. These instructions were refused and the issues described submitted as

questions of fact. On assumption of risk, the court instructed the jury as follows:

"* * * [D]efendant, Jerry Hahn, claims that the deceased * * * assumed the risk incident to their deaths. Assumption of risk is voluntarily placing one's self in a position to chance known hazards or dangers, that is, to take a chance on dangers which are known to him.

"If you find that these men * * * assumed the risk, you must find:

"1. That they had knowledge of the risk.

"2. That they appreciated the risk.

"3. That they had a choice to avoid the risk or chance it, and voluntarily chose to chance it.

"If a person had assumed the risk, then the trustee for the benefit of his next of kin cannot recover for any damages sustained."

Plaintiffs excepted to these instructions and in motions for new trial assigned them as error.

■ Without reference to the South Dakota guest statute (§ 44.0362), we are convinced that under Minnesota law, which plaintiffs seek to apply, decedents' assumption of the risk involved in traveling over the lake ice with defendant would bar plaintiffs' recovery. It is clear from the evidence that decedents knowingly accompanied defendant in his planned journey across the lake over a route where no driveways existed. Anyone familiar with a lake of this size, as were both decedents who lived in its near vicinity, must have been aware that there would be areas upon it where the ice might be too thin to support the weight of an automobile; or where, because of currents or depths, the water would remain unfrozen. These are hazards well known to residents living in the vicinity of any large lake. Notwithstanding this, decedents not only acquiesced in defendant's plan to cross the ice but actually assisted him in freeing the automobile from the snowdrift on the road and aiding him in accomplishing this plan. Prior to their entry onto the lake, they had ample opportunity of turning back and returning to the cafe, a short distance from the stalled car, to seek other means of transportation. Under the facts and circumstances here it seems conclusive that the rule applied in Landru v. Stensrud, 219 Minn. 227, 17 N. W. (2d) 322, (cited with

approval in Hanson v. Bailey, 249 Minn. 495, 83 N. W. [2d] 252, and Tatro v. Carlson, 271 Minn. 536, 137 N. W. [2d] 187) would be applicable. There we stated (219 Minn. 229, 17 N. W. [2d] 323):

"As to the general hazards encountered by the party in going upon the ice on this fishing excursion, plaintiff assumed the risk of injury therefrom. As said in Hubenette v. Ostby, 213 Minn. 349, 350, 6 N. W. (2d) 637, 638:

" 'In the ordinary personal injury action, where plaintiff puts himself in a position to encounter known hazards which the ordinarily prudent person would not do, he assumes the risk of injury therefrom. Such assumption of risk is but a phase of contributory negligence and is properly included within the scope of that term.' "

Based on the principles thus expressed, we must conclude that here no error resulted from the court's submission of the issue of assumption of risk and in fact that the evidence compelled a verdict in defendant's favor upon it.

■ Plaintiffs assert that the court erred with respect to testimony precluded by Minn. St. 595.04.[5] This has reference to defendant's testimony that just prior to his driving onto the lake decedent Paul Vergeldt had walked through the snow to measure its depth down to the lake and that after he had reached the lake he "waved me on." It is plaintiffs' contention that such testimony in effect had reference to a communication between this decedent and defendant and as such was barred under § 595.04. We do not agree with this. Defendant did not testify as to any statements made by this decedent or as to any of his conversations, but rather merely described his conduct and actions just prior to entry onto the lake. As this court stated in Chadwick v. Cornish, 26 Minn. 28, 31, 1 N. W. 55, 57: [6]

---

[5] Minn. St. 595.04 provides: "It shall not be competent for any party to an action, or any person interested in the event thereof, to give evidence therein of or concerning any conversation with, or admission of, a deceased or insane party or person relative to any matter at issue between the parties, * * *."

[6] Cited with approval in Chard v. Darlington, 243 Minn. 489, 500, 68

"* * * The language of the act, 'any conversation with, or admission of,' refers, strictly, only to spoken words. * * * [I]t does not exclude testimony of the acts of the deceased or insane party, although they may in law have the same effect as oral admissions."

Based upon this well-established construction of § 595.04, it is clear that no error was committed in permitting the testimony described. See, also, Chard v. Darlington, 243 Minn. 489, 68 N. W. (2d) 405; Hulett v. Carey, 66 Minn. 327, 69 N. W. 31, 34 L. R. A. 384.

Affirmed.

---

N. W. (2d) 405, 412; Veum v. Sheeran, 95 Minn. 315, 104 N. W. 135; Hulett v. Carey, 66 Minn. 327, 69 N. W. 31.