SCHMIEDECK and another, Appellants, v. GERARD and another, Respondents.

*No. 149. Argued March 3, 1969.—Decided April 1, 1969.*
(Also reported in 166 N. W. 2d 136.)

136

For the appellants there was a brief and oral argument by *Burton A. Strnad* of Milwaukee.

For the respondents there was a brief by *Giffin, Simarski, Goodrich & Brennan,* attorneys, and *James P. Brennan* of counsel, all of Milwaukee, and oral argument by *James P. Brennan.*

WILKIE, J.  There is no question about Gerard's overwhelming responsibility for this accident.  In an effort to win a new trial, plaintiffs raise several issues alleging prejudicial error by the trial court.  They are:

1. Did the trial court err in submitting to the jury the question of Carol Schmiedeck's negligence as to lookout?

2. Did the trial court commit prejudicial error by refusing to permit plaintiffs' counsel to argue regarding the number of feet per second defendant Gerard's automobile traveled at a given speed and the amount of time it took it to travel a specified distance at a given speed?

3. Did the trial court err in refusing to give the absent-witness instruction in view of defendants' failure to call Gerard's brother?

4. Were the damages awarded to Carol Schmiedeck inadequate?

5. Did the testimony regarding the injury to Mrs. Schmiedeck's coccyx adversely affect the damage award?

*Carol Schmiedeck's Lookout.*

Due to the location of the store building on the northwest corner of the intersection and the soda truck parked approximately five feet to the north of the stop sign on the northwest corner of the intersection, plaintiffs contend Carol Schmiedeck was unable to see Gerard's car until it had passed the soda truck.

A person proceeding with the right-of-way on an arterial highway has a right to assume that others approaching on intersecting highways will stop before entering the intersection.[1] But the operator of the vehicle having the right-of-way on the arterial must still maintain a proper lookout.[2]

We conclude that a jury question as to negligent lookout on Carol Schmiedeck's part was presented. She told the police officer at the scene of the accident that "All of a sudden something white came real fast from the left and hit me." She testified that she did not actually see the car she collided with but just saw a streak of lightning coming at her seconds before the collision. Later she testified she did not see anything in the intersection before the collision. Thus, a jury question was raised as to Carol's alleged negligent lookout to determine whether, had she maintained a more efficient lookout, she could have taken some evasive action to avoid the collision.

[1] *Baker v. Herman Mut. Ins. Co.* (1962), 17 Wis. 2d 597, 603, 117 N. W. 2d 725.

[2] *Puhl v. Milwaukee Automobile Ins. Co.* (1959), 8 Wis. 2d 343, 348, 99 N. W. 2d 163; *Oelke v. Earle* (1956), 271 Wis. 479, 483, 74 N. W. 2d 336; *Whyte v. Lindblom* (1934), 216 Wis. 21, 24, 255 N. W. 265, 256 N. W. 244.

Plaintiffs argue that Carol was confronted by an emergency as a matter of law. The availability of the claim of an existing emergency negativing acts of alleged negligence does not apply when the negligent conduct complained of is negligent lookout; it applies only when the element of negligence inquired into concerns management and control.[3] There was no question submitted to the jury as to alleged negligent misconduct on the part of Carol as to management and control and thus the emergency doctrine does not apply.

### Plaintiffs' Contentions as to Defendant's Speed.

During the course of the trial plaintiffs' counsel requested that the trial court take judicial notice that a vehicle traveling 20 miles per hour would be moving approximately 29 feet per second. The trial court refused to do so.

During final argument to the jury counsel made a similar statement with regard to feet traveled per second. Defendants objected that the comment was improper because there was no such evidence in the record. The trial court sustained the objection. Plaintiffs' counsel then commented to the jury that only a second to a second and one half elapsed from the time defendant Gerard's automobile was visible to Carol until the moment of impact. Again the trial court sustained defendants' objection.

Robert Roepke, a motorcycle patrolman for the city of Milwaukee, testified that he took a statement from Lawrence Gerard, the brother of defendant Frank Gerard, to the effect that they did not see a stop sign and were going about 25 miles per hour.

As to speed, defendant Frank Gerard testified at one point that he was going 25 as he approached the inter-

---

[3] *Geis v. Hirth* (1966), 32 Wis. 2d 580, 586, 146 N. W. 2d 459.

section of the two streets. Later he testified that he was going 20 miles per hour when he entered the intersection and at the moment of impact.

In *Baker v. Herman Mut. Ins. Co.*,[4] concerning an accident in which an automobile collided with a tractor-trailer unit, this court took judicial notice "of the fact that . . . the truck had a momentum equal to the product of its mass and velocity. 1 Collier's Encyclopedia (1960), Analytical Mechanics, p. 587." [5]

In *Wells v. Dairyland Mut. Ins. Co.*,[6] wherein a witness testified that an automobile was traveling between 40 and 45 miles per hour and that it came to a stop in a distance of 10 to 15 feet, this court stated:

". . . It is a matter of common knowledge that it is a physical impossibility to bring a moving automobile traveling at 40 miles per hour to a stop in a distance of 15 feet under the circumstances which existed here." [7]

In *Fischer v. Fischer*,[8] this court took judicial notice of stopping distances as set forth in the Wisconsin's Manual for Motorists (rev. ed. January, 1963).[9]

Standards applicable to the trial court in taking judicial notice were discussed in *Fringer v. Venema*.[10] In that case the trial court, on its own motion, took judicial notice of the fact that a bull old enough to service 15

[4] *Supra*, footnote 1.

[5] *Id.* at page 601.

[6] (1957), 274 Wis. 505, 80 N. W. 2d 380.

[7] *Id.* at pages 509, 510.

[8] (1966), 31 Wis. 2d 293, 307, 308, 142 N. W. 2d 857.

[9] The following decisions have recognized that the court may take judicial notice of the Wisconsin's Manual for Motorists: *Blahnik v. Dax* (1963), 22 Wis. 2d 67, 70, 125 N. W. 2d 364; *Mainz v. Lund* (1963), 18 Wis. 2d 633, 642, 119 N. W. 2d 334; and *St. Paul Fire & Marine Ins. Co. v. Burchard* (1964), 25 Wis. 2d 288, 295, 130 N. W. 2d 866.

[10] (1965), 26 Wis. 2d 366, 370, 132 N. W. 2d 565, 133 N. W. 2d 809.

heifers in a period from May to September was at least six months old at the time of the breeding. The trial court did not notify the parties that it had judicially noticed this fact until judgment was rendered. After reviewing various authorities, this court concluded that:

"We subscribe to the rule that the trial court may in its discretion take judicial notice of facts of 'verifiable certainty' either upon its own motion or upon request of a party to the action. If the fact to be noticed is not one of general common knowledge but can be verified to a certainty by reference to competent authoritative sources, and is to be used as an adjudicative as distinguished from a legislative fact, the trial judge or the party requesting judicial notice should notify the parties or the adversary, . . . ." [11]

Thus, the court determined that although the facts were proper for judicial notice, the trial court erred in not giving the parties adequate notice to enable them to be heard on the question of verifiable certainty. [12]

In the present case, the substance of plaintiffs' request was that the trial court take judicial notice of facts necessary to convert miles per hour into feet per second. This is not a complex computation. In fact, in conference the trial court acknowledged that a vehicle traveling 20 miles per hour travels slightly in excess of 29 feet per second.

Nevertheless, the court refused to allow plaintiffs' counsel to argue these facts to the jury.

We conclude that the trial court's refusal to take judicial notice of these facts amounted to an abuse of discretion. But, as we recently stated in *Neider v. Spoehr:* [13]

". . . This court will not reverse unless it clearly appears that the trial court abused its discretion and that the error affected a substantial right of the complaining party and probably affected the result of the trial."

---

[11] *Id.* at pages 372, 373.

[12] *Id.* at page 373.

[13] (1969), 41 Wis. 2d 610, 618, 165 N. W. 2d 171.

Defendant Gerard was found 90 percent to blame for this collision. The jury found the plaintiff Carol Schmiedeck negligent as to lookout but apportioned her blame as only 10 percent. It does not appear that the result in this case would have been any different had the trial court ruled differently.

### Absent-Witness Instruction.

Lawrence Gerard, defendant Frank Gerard's brother, was a passenger in Frank Gerard's automobile at the time of the accident and was therefore a witness to the accident. The police officer who investigated the accident testified that Lawrence Gerard stated that Frank was traveling at approximately 25 miles per hour at the time of the accident. The defense did not call Lawrence to testify. Frank Gerard testified that his brother was not in court because they both ran a service station and it was necessary for one of them to be there at all times while it was open.

"The general rule is that the failure of a party to call a material witness within his control, or whom it would be more natural for such party to call than the opposing party, raises an inference against such party." [14]

The Schmiedecks contend that the rule is applicable in this case and that it was error for the trial court to refuse to instruct the jury accordingly.

In *Booth v. Frankenstein*,[15] the defendant failed to call two witnesses who had ridden in the car with the deceased. This court concluded that it was error for the trial court to instruct the jury that it could consider as a circumstance against the defendant the failure of de-

[14] *Feldstein v. Harrington* (1958), 4 Wis. 2d 380, 388, 90 N. W. 2d 566. *See* Wis J I—Civil, Part I, 410.
[15] (1932), 209 Wis. 362, 245 N. W. 191.

fendant to call as witnesses the two persons who had been riding with the deceased.[16] The opinion states:

". . . The witnesses were equally available to both parties; neither called them. Although there is room for a very weak inference of fact that the witnesses might have been more friendly to the deceased than they were to the plaintiff, there is no such showing of their relations with deceased as would warrant an inference against defendant that could not be drawn against the plaintiff." [17]

In commenting on the general rule regarding the failure to call a material witness, this court in *Feldstein v. Harrington* [18] stated:

". . . This rule was recognized in *Booth v. Frankenstein* . . . but there held not to be applicable. This was because the two persons not called as witnesses in that case were equally available to both parties and there was no more reason why one side should have failed to call them than the other."

Lawrence Gerard was equally available to either party. He was not under the control of the defendants nor does there appear to be any compelling reason to conclude that it would have been more natural for the defendants to call him than for the plaintiffs to do so. If Lawrence Gerard would have aided plaintiffs' case, plaintiffs should have subpoenaed him.

The trial court properly refused to give the requested instruction.

### *Carol's Damages.*

Appellants contend that the award of $1,500 for Carol's personal injuries is inadequate. They have asked

[16] *Id.* at pages 369–371.
[17] *Id.* at page 371.
[18] *Supra,* footnote 14, at page 389.

the trial court and now this court to raise the award to such amount as is fair and reasonable.

In *Helleckson v. Loiselle* [19] this court applied the *Powers rule* [20] to an inadequate damage award. As in *Helleckson,* in the absence of a detailed statement by the court analyzing its position on damages, it is now necessary for this court to " 'review the entire record as a matter of first impression and ascertain whether, in its judgment, the verdict . . .' " [21] is inadequate. "Also, in reviewing the evidence to determine whether the damages are inadequate we must view the evidence in the light most favorable to the defendant." [22]

Carol Schmiedeck's own testimony reveals that at the moment of impact she struck her head and blacked out. She testified that when she awoke she was standing next to the car; that an ambulance transported her to the hospital where she remained for a few hours; that after leaving the hospital she went to the home of her mother where she and her husband lived for a period of six weeks following the accident; that she was in considerable pain during this period and spent much time in bed; that she had pain in her arm, leg, back, head, neck, and knees; that for a period of six to eight weeks after the accident her vision was blurred; that her left side was taped for a period of about four months; that after she returned

[19] (1967), 37 Wis. 2d 423, 155 N. W. 2d 45.

[20] *Powers v. Allstate Ins. Co.* (1960), 10 Wis. 2d 78, 102 N. W. 2d 393. *See Parchia v. Parchia* (1964), 24 Wis. 2d 659, 130 N. W. 2d 205; *Dodge v. Dobson* (1963), 21 Wis. 2d 200, 124 N. W. 2d 97; *Cordes v. Hoffman* (1963), 19 Wis. 2d 236, 120 N. W. 2d 137; *Rupp v. Travelers Indemnity Co.* (1962), 17 Wis. 2d 16, 115 N. W. 2d 612; *Wendel v. Little* (1961), 15 Wis. 2d 52, 112 N. W. 2d 172.

[21] *Bach v. Liberty Mut. Fire Ins. Co.* (1967), 36 Wis. 2d 72, 83, 152 N. W. 2d 911; quoting from *Moritz v. Allied American Mut. Fire Ins. Co.* (1965), 27 Wis. 2d 13, 24, 133 N. W. 2d 235.

[22] *Helleckson v. Loiselle, supra,* footnote 19, at page 427. *See McLaughlin v. Chicago, M., St. P. & P. R. R.* (1966), 31 Wis. 2d 378, 390, 143 N. W. 2d 32.

to her own home, she was able to do very little house work; that several months after the accident she was still suffering from "aches and pains;" that she was still seeing Dr. Banach in 1967 for a "pulling pain" in her neck and because the lower part of her back and her hips felt like they were out of place; that she saw a dentist following the November 12, 1964, accident because the teeth in the right side of her mouth seemed loose; that the dentist filled one tooth and filed another down. She testified that as of the date of trial, some three years after the accident, if she sat in one position for a long time there was a "drawing like, a dull feeling" in the right side of her head and across her back; that she had some difficulty getting out of bed and had to sleep with her head tilted in an "odd position."

Dr. Edward J. Banach, an osteopathic physician and surgeon treated Carol. He testified that as a result of the accident, Carol Schmiedeck sustained a cerebral concussion with loss of consciousness; a muscular ligamentous sprain (sprain of the little muscles and ligament fibers that keep the vertebra together); tears of the cervical spine; traumatic abrasion of the left anterior vertex; traumatic contusion to the left orbital fossa (blow to the eye socket); muscular ligamentous strain to the lumbar spine; fracture of the left seventh rib; and traumatic contusions to the right hand. As to permanency of the injuries, Dr. Banach testified:

". . . the weakness and muscle injury created at the time of the accident may come and go and be of permanent nature due to the tearing of the fine musculature and ligamentous structures together with possible scar formation in this area."

On cross-examination, Dr. Banach testified that he treated Mrs. Schmiedeck in March of 1965 for an injury to her coccyx which was sustained when she fell down a

flight of stairs and landed on her buttocks. The coccyx was broken but Dr. Banach's testimony reveals that he treated the plaintiff, Mrs. Schmiedeck, on only one occasion for this injury and that she never again complained of it. Also, on cross-examination, a number of errors in Dr. Banach's report were revealed. Whereas his report stated that Mrs. Schmiedeck's left seventh rib was fractured, he acknowledged that in reality it was her left tenth rib. Also, his report indicated that he took X rays of her lumbar spine when, in fact, such X rays were not taken. Furthermore, Dr. Banach acknowledged that his report erroneously stated that "roentgen studies reveal normal bony configuration with no evidence of bony fracture."

Dr. Phillip Shovers testified on behalf of defendants. He examined Carol Schmiedeck in his office on September 12, 1967, to determine the nature of her injuries as of that date. He testified that at that time she complained of lower back pain; tightening of muscles in her shoulders and neck; a click in her right hip with radiation of pain to the right calf muscles; occasional numbness in her right ring and little fingers; and intermittent pain on the left side of her chest.

After examining the plaintiff it was the doctor's conclusion that there was no objective evidence to substantiate her subjective complaints except a finding that the right radial pulse was diminished due to pressure on the artery when the plaintiff moved her neck in certain positions. However, it was his opinion that the cause of this difficulty was nontraumatic in nature and thus not caused by the accident. Dr. Shovers testified that:

"It is my opinion to a reasonable medical probability it would be extremely unusual for all these areas, her head, her lower back, right leg and calf and right medial and ring fingers and left side of her chest, to continue to cause symptoms three years after the type of injury she had."

The jury recognized that Mrs. Schmiedeck had been injured and as a result of the injuries was incapacitated for a time. This is evident from the jury's award for medical expenses, loss of consortium, and personal injuries. In arriving at the award of $1,500 for Carol's personal injuries, the jury may have considered the errors contained in Dr. Banach's report to plaintiffs' attorney; the inability of Dr. Shovers to objectively substantiate Carol's subjective complaints; and Dr. Shovers' statement that it was unusual for a person to complain of the type of injuries Mrs. Schmiedeck complained of three years after the accident.

The amount of damages awarded is a matter resting largely in the discretion of the jury.[23] The instant matter represented varying testimony of Carol herself and the two doctors. The award, in our opinion, is low, but it is supported by credible evidence as against the charge that it is inadequate. We see no reason for upsetting that award.

### Evidentiary Rulings.

Respondents' attorney questioned Carol's doctor regarding a fall in 1965 causing an injury to appellant's coccyx. The doctor testified that Carol was treated for this injury only on one occasion and did not complain of it thereafter. Appellants contend that respondents made no attempt to relate the 1965 fall to the injuries sustained in the 1964 accident and that the purpose of such testimony was to mislead and confuse the jury. However, the record reveals that there was an attempt to relate these injuries. Whether respondents were successful appears on this record to have been a question for the jury. It should also be noted that there was no

[23] *Kablitz v. Hoeft* (1964), 25 Wis. 2d 518, 525, 131 N. W. 2d 346.

objection to the introduction of testimony relating to the coccyx injury.

Finally, appellants argue that the trial court erred in prohibiting counsel from questioning respondents' doctor with respect to the character of the new tissue formed to repair a sprain. The scope of cross-examination is generally within the discretion of the trial court as is considered in the *Boller Case* [24] decided today. There was no abuse of the trial court's discretion in limiting the cross-examination here.

*By the Court.*—Judgment affirmed.

